MELO-TONE VENDING, INC. *vs.* SHERRY, INC., & others.[1]

Nos. 94-P-970 & 94-P-1141.

Suffolk. May 10, 1995. - October 17, 1995.

Present: KASS, GILLERMAN, & PORADA, JJ.

*Contract*, Interference with contractual relations, Damages. *Unlawful Interference. Consumer Protection Act*, Businessman's claim, Unfair act or practice. *Damages*, Unlawful interference. *Practice, Civil*, Discovery.

At the trial of an action for intentional interference with contractual relations the judge correctly ruled that the contract was not ambiguous with respect to its exclusivity provision. [318-319]

In a civil action the evidence supported the finding that a defendant's intentional interference with the plaintiff's contractual relations was improper in motive and means. [319-320]

In a civil action the judge correctly denied a defendant's motion to dismiss the amended complaint; the evidence supported the jury's finding that the defendant acted wilfully and the judge's decision under G. L. c. 93A to double the damages; the damages found by the jury were not speculative; and the judge correctly imposed sanctions for the defendant's postjudgment obduracy. [320-321]

CIVIL ACTION commenced in the Superior Court Department on March 6, 1992.

The case was tried before *Charles F. Barrett*, J., and a motion for sanctions, costs, and attorney's fees was heard by *Thayer Fremont-Smith*, J.

*Thomas J. Nicholas* (*S. James Alberino* with him) for James Indelicato.

*James J. Ronan* (*John M. McAuliffe* with him) for the plaintiff.

KASS, J. Relatively recent opinions that have undertaken to explicate the torts of intentional interference with a contract or prospective contractual relations have underscored that a

---

[1] Brian Leonard and James Indelicato.

necessary element of those causes of action is a defendant's improper purpose or use of improper means while interfering with the contractual arrangements of others. See *United Truck Leasing Corp.* v. *Geltman,* 406 Mass. 811, 816-817 (1990); *Wright* v *Shriners Hosp. for Crippled Children,* 412 Mass. 469, 476 (1992); *Boothby* v. *Texon, Inc.,* 414 Mass. 468, 487 (1993); *King* v. *Driscoll,* 418 Mass. 576, 587 (1994); *Sereni* v. *Star Sportswear Mfg. Corp.,* 24 Mass. App. Ct. 428, 432-433 (1987); *Mullen* v. *Ludlow Hosp. Soc.,* 32 Mass. App. Ct. 968, 971 (1992); *W. Oliver Tripp Co.* v. *American Hoechst Corp.,* 34 Mass. App. Ct. 744, 751-753 (1993); *Conway* v. *Smerling,* 37 Mass. App. Ct. 1, 7-8 (1994); *Walker* v. *Waltham Hous. Authy.,* 44 F.3d 1042, 1050 (1st Cir. 1995); Restatement (Second) of Torts § 767 (1979). In those cases, the courts determined that the necessary element, which for shorthand purposes we may call "malevolence," was missing.[2] The case now before us illustrates the harboring of an improper purpose and the use of improper means.[3]

Melo-Tone Vending, Inc., the plaintiff (Melo-Tone), is in the business of installing coin-operated vending machines (e.g., cigarette machines, jukeboxes, games, amusements, and pay telephones) in locations such as barrooms and restaurants.[4] Among its accounts was Bentley's Steak House at 570 Southern Artery, Quincy, an establishment owned by Sherry, Inc. (Sherry), of which the controlling figure was Brian Leonard. On June 22, 1989, Melo-Tone and Sherry entered into a contract under which Melo-Tone was to install at Bentley's a jukebox and two pool tables, in addition to a cigarette machine already in place. Sherry was to receive a "commission" of 22.75% on each package of cigarettes sold and 50% of the net yield from the jukebox and pool tables.

---

[2]Compare *Draghetti* v. *Chmielewski,* 416 Mass. 808, 816-817 (1994), in which the record left the question of "malevolence" fairly in dispute and was, therefore, sufficient to put the question to a jury.

[3]For an earlier example, see *Comey* v. *Hill,* 387 Mass. 11, 19-20 (1982).

[4]We take our facts on the basis of the evidence seen in a light most favorable to the plaintiff. See *Walsh* v. *Chestnut Hill Bank & Trust Co.,* 414 Mass. 283, 290-291 (1993).

For a term of eight years (i.e., until June 21, 1997), Melo-Tone would have the "sole and exclusive right" to operate vending machines in a "prominent part" of Sherry's premises. Melo-Tone identified its machines by large green labels, bearing its name and telephone number, that were placed on the fronts of the machines.

Business between Melo-Tone and Sherry was uneventful until January, 1992, when Sherry was approached on behalf of James Indelicato, proprietor of Park Square Vending (Park Square), with a proposition for making Bentley's over into a sports bar, for which — not incidentally — Park Square's machines would replace Melo-Tone's. Sherry's principal officer, Leonard, gave the word to Park Square's advance man that there was a small matter of a contract with Melo-Tone, but that did not derail the sports bar project. Late in January or early in February, 1992, Melo-Tone's principal officer, Jack D. Kerner, got wind that Park Square was going to install an air hockey game at Bentley's. Kerner called Park Square and mailed to Park Square a copy of his "exclusive" contract with Sherry regarding 570 Southern Artery. Nevertheless, on February 11, 1992, Park Square moved its air hockey game machine onto the Sherry premises.

By letter dated February 18, 1992, Melo-Tone's lawyer informed Park Square that it had exclusive rights to place vending machines at Sherry's establishment and demanded immediate removal of Park Square's air hockey machine. Park Square instead added two pool tables and a cigarette machine, as well as some other machines, at Sherry's place of business. Space was a problem that Park Square solved by furnishing funds to Sherry to move Melo-Tone's machines out. On March 6, 1992, Melo-Tone brought an action against Indelicato, Sherry, and Leonard. Indelicato provided for Sherry's and Leonard's defense.

As to the defendants Sherry and Leonard, the plaintiff Melo-Tone stipulated dismissal well before trial, by a filing made February 1, 1993. There had been a reconciliation: Melo-Tone was back in and Park Square was out. Melo-

Tone's common law claims and c. 93A claims were tried to a jury (the trial judge having elected to have the jury find the facts on the c. 93A question). The jury returned a verdict that the defendant Indelicato had intentionally interfered with the contractual relationship between Melo-Tone and Sherry; that the defendant committed an unfair act or practice in respect of the plaintiff; and that he had done so wilfully. The jury set the damages at $21,000, which the judge, exercising his discretion under G. L. c. 93A, § 11, doubled and to which he added $11,255 in legal fees. Indelicato has appealed, raising multiple issues, among them that intentional interference with contractual relations had not been proved because there was no evidence of an exclusive contract or of improper purpose, i.e., that he was entitled to a directed verdict on the tort of intentional interference with contractual relations and, logically, on the charge of unfair practice as well.

1. *Intentional interference with contract.* To make out a case of intentional interference with a contract, a plaintiff must prove that "(1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *G.S. Enterprises, Inc.* v. *Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991).

As the summary of the facts the jury could have found demonstrates, there was more than sufficient evidence to permit the jury to find that (1) Sherry had entered into an eight-year contract with Melo-Tone to have Melo-Tone operate vending machines on Sherry's premises; (2) Indelicato had induced Sherry to get vending machines from him and to push Melo-Tone's out the door; and (3) Melo-Tone lost profits while its machines were excluded from Sherry's place. Although obliged to concede by the overwhelming evidence that Melo-Tone had entered into a contract with Sherry, Indelicato urges that the contract was not exclusive for the entire Sherry premises but only for that which was a "promi-

nent part of the premises," a vague provision which failed to warn Indelicato what portion of Sherry's premises was off limits to him.

In context, as the evidence tended to prove, "prominent part of the premises" meant where the public would go in Sherry's establishment. An exclusive supplier of vending machines would wish to avoid having his equipment relegated to locations where the customers were unlikely to come across them. Indeed, the schedules pertaining to the details of amusement, music, and cigarette machines, which are part of the agreement, modify the phrase "prominent part of said premises," with the words, "accessible to the public and the customers of the owner." The judge correctly ruled that the agreement was not ambiguous on this score.

We arrive at the crux of the matter. Indelicato argues that his motives were competitive and financial, not to harm Melo-Tone, and that his conduct was not improper. See *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. at 817; *King* v. *Driscoll*, 418 Mass. at 587. In assessing whether interference with a contract is proper we consider general factors such as "the nature of the actor's conduct," Restatement (Second) of Torts § 767(a); "the interests of the other with which the actor's conduct interferes," *id.* § 767(c); and "the social interests in protecting the freedom of action of the actor and the contractual interests of the other." *Id.* § 767(e). For competition and for the rough and tumble of the world of commerce, there is tolerance, see *W. Oliver Tripp Co.* v. *American Hoechst Corp.*, 34 Mass. App. Ct. at 753, even though the fallout of that rough and tumble is damage to one of the competitors. See *Leigh Furniture & Carpet Co.* v. *Isom*, 657 P.2d 293, 307 (Utah 1982).

It is one thing to lure a customer away from someone with whom it has been doing business by means of a better product, service, or prices but quite another to abet the repudiation of solemn contractual obligations of which the party interfering is well aware. Indelicato not only knew Melo-Tone's contract with Sherry still had five years to run but received a copy of it. Indelicato went beyond inducing Sherry to commit

a breach of contract, itself sufficient to make out the tort[5]; he abetted the breach by paying to have his competitor's machines unlawfully moved from Sherry's premises and subsidized Sherry's legal defense when Melo-Tone asserted its legal rights. The means were improper and spoke eloquently to Indelicato's purpose, although it is enough to prove either improper means *or* motive. *Draghetti* v. *Chmielewski*, 416 Mass. at 808, 816 n.11 (1994).

2. *Other points raised on appeal.*

*a.* The motion to dismiss the c. 93A claim was properly denied. Read in its entirety, the amended complaint informs the reader that the unfair business practices claim is predicated on the tortious interference claim. The defendant had notice of the theory of Melo-Tone's case. See *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989).

*b.* There was evidence of a "purposeful level of culpability," *Wasserman* v. *Agnastopoulos*, 22 Mass. App. Ct. 672, 681 (1986), that supported the jury's finding that Indelicato had acted wilfully and the judge's decision to double the damages found by the jury.

*c.* The damages found by the jury were not speculative. The jury could look to the evidence of Indelicato's tainted profits as a measure of the profits that Melo-Tone was capable of generating at Sherry's establishment. See *Jet Spray Cooler, Inc.* v. *Crampton*, 377 Mass. 159, 179 (1979).

*d.* A Superior Court judge other than the trial judge imposed sanctions on Indelicato for obdurate noncompliance with postjudgment discovery. Indelicato failed to appear at two scheduled depositions despite court orders so to do. Although the judge who imposed sanctions made no express finding of wilfulness, Melo-Tone's motion had been pitched on "a pattern of recalcitrance in violation of court orders and the rules of civil procedure." The judge's determination of

---

[5]See Restatement (Second) of Torts § 766 comment k, & § 766A comment g (1979); 2 Harper, James & Gray, The Law of Torts §§ 6.8 & 6.9 (2d ed. 1986).

wilfulness was implicit and warranted. Compare *Gos* v. *Brownstein*, 403 Mass. 252, 256-257 (1988).

*Judgment affirmed.*

*Order allowing motion for sanctions, costs and attorney's fees affirmed.*