Fecteau, J.
On June 27, 2003, the plaintiff, Opus Investment Management Inc. (“Opus”), filed a complaint against two of its former employees, John C. Donohue (“Donohue”) and David P. Bolduc (“Bolduc”). The complaint also names Lincoln Capital Fixed Income Management Company, LLC (“Lincoln Capital”), Investor’s Bank and Trust Company (“IBTj, and Paul J. Jasinski (“Jasinski”). The complaint alleges that Donohue and Bolduc, while still employed by Opus, conspired with the other defendants to unlawfully solicit business from a customer of Opus and to recruit other Opus employees to a newly-formed competitor. Count I of the complaint alleges breach of fiduciary duty against Donohue, Bolduc, Jasinski and Lincoln Capital. Count II alleges tortious interference with contractual and beneficial relations against Donohue, Bolduc, Jasinski and Lincoln Capital. Count III asserts that IBT breached the implied covenant of good faith and fair dealing. Count IV asserts that Donohue, Bolduc, Jasinski, IBT and Lincoln Capital violated G.L.c. 93A, 2 & 11. The case is before the court on motions to dismiss filed by defendants Donohue and Bolduc, Jasinski and IBT, and Lincoln Capital.
BACKGROUND
The Merrimac Funds (“Merrimac”) are organized as a trust and registered as an investment company that manages money market funds for institutional investors. Merrimac was created by the defendant IBT to manage money market funds. In its role as adviser to Merrimac, IBT recommends investment Sub-Advisers to manage individual funds, subject to the approval of the Merrimac Board of Trustees (‘Trustees”). Opus is a registered investment adviser. In 1998, IBT recommended to the Trustees that Opus serve as Sub-Adviser for a certain Merrimac Fund known as the Merrimac Cash Portfolio. In 1999, Merrimac hired Opus as the Sub-Adviser to IBT on another Merrimac fund known as the Merrimac U.S. Government Portfolio. The Sub-Adviser agreements (“Agreements”) that cover Opus’ management of the Cash Portfolio and the Government Portfolio provide for an initial two-year term, followed by an annual renewal authorized by a vote of the Trustees. Both Agreements were up for renewal in May of 2003.
■ Defendant Donohue j oined Opus in 1995 and eventually became a Vice President serving as the portfolio manager for the Merrimac Funds. In this capacity he supervised the Opus/Merrimac team which consisted of six employees. Defendant Bolduc joined Opus in 1998 and ultimately became Vice President of Sales of Investment Management Services. In the spring of 2003, Defendant Jasinski was the Managing Director of IBT, and also served as the President of Merrimac. In the spring of 2003, Jasinski and Donohue discussed the possibility that Donohue would leave Opus and take the Merrimac business with him.
In mid-April of2003, Jasinski advised the Merrimac trustees that Donohue would be leaving Opus for *52 Lincoln Capital, and recommended that the trustees hire Lincoln as a Sub-Adviser. On April 22, 2003, Donohue submitted his resignation to Opus and began work at Lincoln Capital, a subsidiary of Lehman Brothers. Donohue’s assistant portfolio manager followed him to Lincoln Capital six days later. Beginning on May 1,2003, Opus and Lincoln made presentations to IBT officials to demonstrate their respective abilities to serve as Sub-Adviser on the Merrimac Funds. Similar presentations were made on May 6, 2003 to IBT officials and the Trustees. In the following week, the four remaining members of the Opus money market team announced their resignations and shortly thereafter begem work at Lincoln Capital. On May 23, 2003, Jasinski informed Opus that it was fired as Sub-Adviser on the Merrimac Funds, effective May 31, 2003, and that Lincoln was to be Merrimac’s new Sub-Adviser.
DISCUSSION
“The plaintiffs need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim.” Bell v. Mazza, 394 Mass. 176, 184 (1985). When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the allegations of the complaint, as well as any reasonable inferences to be drawn from them in the plaintiffs favor. Fairneny v. Savogran Co., 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). “[The] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissals on the basis of pleadings, before facts have been found, are discouraged. Gennari v. City of Revere, 23 Mass.App.Ct. 979, 980 (1987).

COUNT I

Count I alleges breach of fiduciary duty against defendants Donohue and Bolduc, Jasinksi, and Lincoln Capital. Each defendant asserts that the respective claims against them should be dismissed. Donohue and Bolduc argue that Opus cannot show that their conduct was the cause of IBTs decision not to renew its contract with Opus. The plaintiff claims that in January of 2003, defendants Donohue and Bolduc, while still employed at Opus, approached Jasinski with the intent to take the Merrimac Funds business to another entity. Furthermore, the plaintiff claims that Donohue and Bolduc recruited other Opus employees to leave Opus, also while Donohue was still employed by Opus. Accepting the allegations as true, the complaint states a valid cause of action for breach of fiduciary duty by Donohue and Bolduc, that at a minimum, caused disruption to Opus’s operations. Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 173-74 (1991) (top managerial employee may not solicit the departure of employees to work for a competitor); Eastern Marble Products Corp. v. Roman Marble, Inc., 372 Mass. 835, 838-42 (1977) (managerial employee may not solicit his employer’s customers while still working for his employer); Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1, 19 (1983) (corporation was to be compensated for expenses it incurred as result of serious disruption and damage to business and operations by virtue of executives’ breach of their fiduciary duties).
Jasinski argues that the claim of breach of fiduciary duty should be dismissed, as Jasinski owed no duty to Opus. The plaintiff contends that Jasinski is liable for knowingly participating with Donohue and/or Bolduc in a violation of their duty to Opus. One who participates with an employee in a violation of that employee’s duty to his employer is also liable for the wrongful conduct. Augat, 409 Mass, at 172. The complaint alleges that Jasinski planned with Donohue, while Donohue was still an officer of Opus, to recruit Opus employees to Lincoln Capital, and promoted Donohue’s efforts to persuade IBT not to renew its contract with Opus. Drawing reasonable inferences in favor of the plaintiff, the complaint states a valid cause of action for participation in a violation of a duty to Opus.
Under the same theory, the complaint properly alleges that defendant Lincoln Capital is liable for its participation in Donohue’s unlawful conduct. The plaintiff asserts that Lincoln Capital participated with Donohue, while he was still employed by Opus, in preparing presentations for IBT aimed at obtaining the contract to act as Sub-Adviser to the Merrimac Funds. The plaintiff also asserts that Lincoln Capital coordinated efforts with Donohue to lure away Opus employees while Donohue still owed a fiduciary duty to Opus. Although the defendant points out that the theory of liability in Augat was described as “substantially isolated,” the plaintiffs allegations nevertheless support a claim that Lincoln knowingly participated in Donohue’s alleged breach of fiduciary duty. Augat, 409 Mass, at 172. Accepting as true the factual allegations of the complaint, and the reasonable inferences drawn therefrom, the defendants’ motion to dismiss is denied as to Count I. Fairneny, 422 Mass, at 470.

COUNT II

Count II of the complaint alleges that Donohue and Bolduc, Jasinski, and Lincoln Capital intentionally interfered with Opus’ contractual and advantageous relations. The plaintiff asserts that a contract existed between it and Merrimac, and that the defendants, with knowledge of that relationship, improperly interfered with Opus’ ability to renew its contract as a Sub-Adviser, causing loss to the plaintiff. “For purposes of this cause of action, ‘improper means’ may consist of a violation of a statute or common law precept.” Kurker v. Hill, 44 Mass.App.Ct. 184, 191 (1998), citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 817 (1990). The allegations that defendants breached their fiduciary duty, or knowingly *53 participated in the breach of a fiduciary duty to another, supports a claim that the defendants used improper means to interfere with Opus’ contractual relations with IBT. Kurker, 44 Mass.App.Ct. at 192. The complaint provides the defendants with proper notice of the plaintiffs theory. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Jasinski argues that as an officer of IBT, he cannot be held liable for interference with contractual and beneficial relationships held by Opus with IBT. The plaintiff argues that the question of privilege is not appropriate for a motion to dismiss. In a defense to a claim of intentional interference with contractual relations, the defendant bears the burden of proof to establish the existence of privilege. Williams v. B&K Med Sys., 49 Mass.App.Ct. 563, 573 (2000), citing Owen v. Williams, 322 Mass. 356, 360 (1948). Additional findings of fact and conclusions of law are required to determine whether Jasinski’s alleged conduct was privileged. See Melo-Tone Vending, 39 Mass.App.Ct. at 314-15. Because it does not appear beyond doubt that the plaintiff can prove no set of facts in support of his claim, the defendants’ motion to dismiss as to Count II is denied. Nader, 372 Mass, at 98.

COUNT III

Count III alleges that IBTs conduct constituted a breach of the implied covenant of good faith and fair dealing. The defendant seeks a dismissal on the grounds that the plaintiff cannot allege that IBT breached the Sub-Adviser Agreements, and that IBT was entitled under federal law to refuse to renew the Agreements. The plaintiff alleges that IBT colluded with Opus employees to prevent Opus from fairly competing for Merrimac’s business. In Massachusetts every contract, even those between sophisticated business people, is subject to an implied covenant of good faith and fair dealing. Anthony’s Pier Four v. HBC Assoc., 411 Mass. 451, 473 (1991). The complaint clearly alleges that IBT colluded with Donohue to prejudice Opus’ ability to fairly compete for renewal of the Sub-Adviser Agreements. See Equip. & Sys. for Indus, v. Northmeadows Constr. Co., 59 Mass.App.Ct. 931, 932 (2003) (dismissal of implied covenant claim was only appropriate where there was no allegation that the defendant colluded with the plaintiffs employees or was aware of wrongful conduct). The defendant’s motion to dismiss Count III is denied.

COUNT IV

Count IV asserts that all five defendants committed unfair or deceptive trade practices in violation of G.L.c. 93A, thereby causing loss to Opus. Donohue and Bolduc argue that the plaintiffs claims under G.L.c. 93A are barred since such claims are inapplicable to an employer-employee relationship. See Manning v. Zuckerman, 388 Mass. 8, 12-14 (1983). However, the plaintiff alleges that Donohue and Bolduc acted as agents of Lincoln Capital, not merely as employees of Opus, in improperly interfering with Opus’ contractual relations with IBT. Intentional interference with contractual relations can serve as the basis for unfair or deceptive practices under G.L. 93A 11. Melo-Tone Vending v. Sherry, Inc., 39 Mass.App.Ct. 315, 320 (1995). The complaint provides proper notice of the plaintiffs theory to defendants Donohue and Bolduc. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). As the claims of intentional interference with contractual relations were also properly alleged against defendants Jasinski and Lincoln Capital, as discussed above, the complaint states a valid cause of action under G.L. 93A against all four defendants named in Count II. Melo-Tone Vending, 39 Mass.App.Ct. at 320.
Since IBT was not the subject of a claim of intentional interference, it asserts that the complaint does not allege any conduct on the part of IBT that would meet the heightened standard of unfair or deceptive practices under G.L. 93A 11. In this case, determining whether the alleged conduct constitutes unfair or deceptive acts involves factual findings and legal conclusions that renders a dismissal inappropriate at this stage. See Anthony’s Pier Four v. HBC Assoc., 411 Mass. 451, 476 (1991) (extensive findings of fact and law that defendant breached implied covenant of good faith and fair dealing justified a finding that conduct was unfair or deceptive under 93A). The defendants’ motion to dismiss Count IV of the complaint is denied.

ORDER

Based on the foregoing, the motion to dismiss is DENIED as to all counts and all defendants.