Patricia ORELL, Plaintiff,

v.

UMASS MEMORIAL MEDICAL CENTER, INC., Implementation Specialists for Health Care, Inc., Myles Walsh, Karen Herron, Paul Corbett and Jeff Scott, individually, Defendants.

No. Civ.A. 00–40227–NMG.

United States District Court,
D. Massachusetts.

April 29, 2002.

David E. Ashworth, Worcester, MA, for Plaintiff.

Richard C. Van Nostrand, Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, Brian E. Whiteley, Scibelli & Whiteley, Anthony A. Scibelli, Scibelli and Whiteley, LLP, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER

GORTON, District Judge.

This case arises out of the termination of the employment of Plaintiff, Patricia Orell ("Orell"). Solely for purposes of the motion to dismiss, the facts are stated as alleged by the plaintiff.

Orell was employed by UMass Memorial Medical Center ("UMMC") from approximately June, 1971 until December 30, 1997 and worked in UMMC's Copy Center Department. During that entire period, she performed her job satisfactorily.

Orell is a qualified handicapped person within the meaning of M.G.L.c. 151B §§ 1(16) & (17) and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), because she has a medical history of physical impairment. Plaintiff does

not specifically describe the handicap from which she suffers but defendants do not dispute that she is handicapped or that she was able to perform the essential functions of her job with accommodation.

Orell notified UMMC of her handicap and UMMC modified her schedule to permit flex time to enable her to attend necessary medical treatment and to avoid the aggravation of her disability caused by working too many consecutive hours. Plaintiff's supervisors, defendants Miles Walsh ("Walsh") and Karen Herron ("Herron"), failed, however, to address her serious concerns about reasonable accommodation after numerous requests.

On August 18, 1997, defendant Paul Corbett ("Corbett"), an employee of defendant Implementation Specialists for Healthcare, Inc. ("ISH"), a consulting firm, began serving as Interim Director to oversee the Materials Management Department of UMMC.

On December 30, 1997, plaintiff was terminated from her employment and, on that same day, defendant Corbett gave her a written explanation of the reasons for her termination. According to defendant, Orell was terminated because of an email message written by her on December 10, 1997 in which she allegedly made false accusations and maligned the characters of Walsh and Jeff Scott, another UMMC employee and defendant in this case.

Orell's relationship with Walsh, Herron and another employee, Catherine Racicot ("Racicot") was acrimonious. Racicot is the secretary of the orthopedic physician of plaintiff's son and, in 1994, Racicot had an affair with Orell's husband. Orell made a claim in September, 1994 that Racicot submitted an inaccurate report with respect to her son's medical condition. In response to that claim, Racicot filed a grievance against plaintiff for harassment.

On December 16, 1997, Walsh filed a grievance complaint against Orell for statements contained in the December 10 email message. Walsh conducted the investigation of his own grievance and participated in the decision to terminate plaintiff's employment. The defendants determined that the allegations in Orell's email message were untrue and that termination was warranted but they waited 20 days before implementing the termination. Plaintiff was denied access to documents which would have established the truth of the allegations contained in her email.

During her employment, plaintiff brought certain legal, ethical and medical issues to the attention of her supervisors and the UMMC Administration, including the falsification of time cards, disparate treatment, denial of promotion, refusal to accommodate her disability and hostile working environment.

In September, 1997, she alerted Walsh to certain false time cards and was, as a result, berated, criticized and scrutinized. In that same month, plaintiff's work schedule was increased to six consecutive hours and she was refused time off for physical therapy.

Orell was denied a promotion in the Copy Center even though she had worked there for 26 years. Defendant Herron suggested that maybe she was getting too old for the job after Orell initiated a discussion concerning reasonable accommodation. The position of Manager of the Copy Center was assigned to a 35-year-old woman who was less qualified for the job.

Plaintiff filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") in June, 1997. UMMC's motion to dismiss the complaint was denied but after plaintiff was allowed to amend it, she elected to dismiss that complaint and pursue a private action.

On December 29, 2000, Orell filed a complaint in this Court alleging, among other things, 1) handicap discrimination in violation of the ADA, 42 U.S.C. § 12101 *et seq.* and M.G.L.c. 151B § 4 for failure to accommodate her disability and for termination of her employment on the basis of a disability, 2) age discrimination in violation of M.G.L. c. 151B, 42 U.S.C. § 2000e ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), 3) infringement of her right to free speech in violation of the First Amendment to the United States Constitution and Article 16 of the Massachusetts Constitution, 4) retaliation, 5) wrongful discharge, 6) breach of contract, 7) breach of the covenant of good faith and fair dealing, 8) intentional interference with contractual relations, 9) intentional infliction of emotional distress, 10) defamation, 11) violation of the federal and state "whistleblower" statutes, 31 U.S.C. § 3730(h) and M.G.L.c. 149 § 185, and 12) hostile environment discrimination in violation of 42 U.S.C. § 2000e.

Pending before the Court is the motion of defendants, ISH and Paul Corbett ("these defendants"), to dismiss.

# I. *Standard for Motion to Dismiss*

A motion to dismiss for failure to state a claim may be granted only if it appears, beyond doubt, that the plaintiffs can prove no facts in support of their claim that entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must accept all factual averments in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992). The Court is required to look only to the allegations of the complaint and if under any theory they are sufficient to state a cause of action, a

motion to dismiss the complaint must be denied. *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987).

# II. *Preliminary Issues*

## A. **Facially Defective Claims**

Before addressing these defendants' arguments on the merits, it is necessary to address certain of plaintiff's claims that are facially defective with respect to all defendants. In both Counts II and III, plaintiff alleges that defendants discriminated against her by terminating her employment on the basis of her disability. The only difference between the two claims is that plaintiff brings Count II under Title VII and Count III under the ADA, 42 U.S.C. § 12101 *et seq.*

The express language of Title VII forbids

> an employer ... to fail to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). Because Title VII applies only to discrimination on the basis of race, color, religion, sex or national origin, Count II of plaintiff's complaint fails to state a claim upon which relief can be granted and will, accordingly, be dismissed as to all defendants. *See Clorox Company v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 30 (1st Cir.2000) (court may dismiss an action *sua sponte* and without notice where claim's defects cannot be cured by amendment).

Similarly, plaintiff alleges in Count VI and VII that defendants treated her disparately and discharged her based on her age. She brings Count VI under Title VII and Count VII under the ADEA, 42 U.S.C. § 621 *et seq.* Because Title VII does not

apply to discrimination on the basis of age, Count VI will be dismissed against all defendants.

Finally, in Count XVIII, entitled "Hostile Environment", which contains a hodgepodge of claims, plaintiff alleges that defendants violated Title VII by taking adverse employment action against her in retaliation for her exercise of free speech and by subjecting her to a hostile work environment and failing to accommodate her disability.

■ In order to state a claim for harassment amounting to the creation of a hostile work environment under Title VII, plaintiff must allege that such harassment was based on her race, color, sex, national origin or religion. Nowhere in her complaint, does plaintiff allege that she was subject to harassment based on anything other than her age or disability. Because Title VII does not apply to discrimination based on age or disability, plaintiff fails to state claim for hostile environment harassment under that statute.

■ In order to state a claim for retaliation under Title VII, plaintiff must show that 1) as an employee she was engaged in an activity protected by that statute and 2) there was a causal link between the protected activity and the adverse employment action. *Hoeppner v. Crotched Mountain Rehabilitation Center, Inc.*, 31 F.3d 9, 14 (1st Cir.1994). Because plaintiff fails to allege that she was retaliated against because she opposed practices prohibited under Title VII, i.e., discrimination on the basis of race, color, religion, sex, or national origin, Count XVIII alleging retaliation in violation of Title VII will be dismissed against all defendants.

### B. The Eleventh Amendment

It is also necessary to address the applicability of the Eleventh Amendment to the United States Constitution to the instant suit. Neither party cites it but it is relevant to the viability of plaintiff's claims against Corbett because she states that she is suing him in his official and individual capacities.

The Eleventh Amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state.

■ As interpreted, the Eleventh Amendment bars suit against a state by citizens of that state in federal court. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 47, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). It precludes the bringing of a federal claim against a state official based on an allegation that such official violated state law in carrying out his duties. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *LaManque, et al. v. Massachusetts Dept. of Employment and Training, et al.*, 3 F.Supp.2d 83, 93–94 (D.Mass.1998).

■ This Court has previously held that UMMC, as a part of the University of Massachusetts, is a public institution established under the laws of the Commonwealth and is, accordingly, an "arm" of the state entitled to Eleventh Amendment immunity. *Ali v. University of Massachusetts Medical Center, et al.*, 140 F.Supp.2d 107, 110 (D.Mass.2001). Insofar as Orell is suing Corbett in his official capacity, the Eleventh Amendment bars plaintiff's state law claims for money damages against him in that capacity. *Mills v. Maine*, 118 F.3d 37, 54 (1st. Cir.1997). Plaintiff's federal law claims for money damages against Corbett in his official capacity are also barred by the Eleventh Amendment.

*Board of Trustees of University of Alabama v. Garrett,* 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (suits in federal court by state employees to recover money damages under Title I of the ADA are barred by the Eleventh Amendment); *Kimel v. Florida Board of Regents, et al.,* 528 U.S. 62, 67, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (same with respect to the ADEA); *U.S. ex. rel. Moore v. University of Michigan,* 860 F.Supp. 400, 405 (E.D.Mich.1994) (same with respect to 31 U.S.C. § 3730(h)).[1]

### III. *Analysis of Arguments of These Defendants in Support of Their Motion to Dismiss*

#### A. Plaintiff's Federal Discrimination Claims

Orell alleges numerous discrimination claims under federal law against defendants Corbett and ISH. She claims that ISH and Corbett violated the ADA by failing to accommodate her disability and discharging her on the basis of her disability. She also alleges that Corbett and ISH violated the ADEA by subjecting her to disparate treatment, failing to promote her and terminating her employment, all on the basis of her age.

These defendants seek to dismiss plaintiff's federal employment discrimination claims on the grounds that 1) they did not make the decision to terminate plaintiff, 2) individual liability is not recognized under the ADEA or the ADA and 3) they were not plaintiff's employers. The First Circuit Court of Appeals has endorsed the practice of treating judicial precedent interpreting Title VII as instructive in interpreting the ADEA. *Serapion v. Martinez,* 119 F.3d 982, 985 (1st Cir.1997). Accordingly, this Court will apply that tenet of interpretation in this case with respect to plaintiff's federal employment discrimination claims. *See Carparts Distribution Center, Inc., et al. v. Automotive Wholesaler's Association of New England, Inc., et al.,* 37 F.3d 12, 16 (1st Cir.1994) (using Title VII as a guide in interpreting ADA).

#### 1. Whether These Defendants made the Alleged Discriminatory Decision to Terminate the Plaintiff's Employment

These defendants argue that they cannot be held liable for the alleged discriminatory termination of plaintiff's employment because they neither had the authority nor made the decision to discharge the plaintiff. UMMC, they contend, made the decision to terminate plaintiff's employment.

Orell alleges in her complaint that Corbett served as Interim Director to oversee the Materials Management Department. She also alleges that Corbett had no power to terminate her under his contract with UMMC. Nonetheless, Orell states in the complaint that Corbett wrote the letter of termination dated December 30, 1997 by which she was discharged from her employment with UMMC. Construed in the light most favorable to the plaintiff, such facts sufficiently allege that Corbett made the decision to terminate plaintiff's employment. *See Garita Hotel Ltd. Partnership,* 958 F.2d at 17 (court must draw all reasonable inferences in the plaintiff's favor).

#### 2. Whether ISH is Plaintiff's Employer for Purposes of the ADA or ADEA

The defendants argue that plaintiff's federal discrimination claims against ISH

---

1. Although defendant UMMC has not filed a motion to dismiss, the Court notes that the Eleventh Amendment bars plaintiff's claims for money damages against it. Furthermore, her claims against the remaining individual defendants are barred to the extent she seeks damages against them in their official capacities.

must be dismissed because ISH was not plaintiff's employer.

Title I of the ADA provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The ADA defines "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). That statute defines "discrimination" to include:

not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

42 U.S.C. § 12112(5)(A).

The ADEA makes it unlawful for an employer:

to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a).

There is no significant distinction between the definition of "employer" in the statutes. The ADA defines "employer" as:

A person engaged in industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person.

42 U.S.C. § 2000e(b). The ADEA defines "employer" in identical terms except that it requires that the employer have at least 20 employees, See 29 U.S.C. § 630.

Although the above statutory definitions do not provide much guidance on the issue of who will be considered an employer, the First Circuit Court of Appeals, along with other circuit courts, has interpreted the term "employer" broadly in order to further the congressional objective of affording equality of employment opportunity. *Carparts*, 37 F.3d at 16; *Rivas, et al. v. Federacion de Asociaciones Pecuarias de Puerto Rico*, 929 F.2d 814, 820 (1st Cir. 1991); *Baranek v. Kelly, et al.*, 630 F.Supp. 1107, 1113 (D.Mass.1986); *United States v. New York State Department of Motor Vehicles, et al.*, 82 F.Supp.2d 42, 46 (E.D.N.Y.2000); *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir. 1973). The First Circuit has recognized that where an entity, by contracting with an employer, acquires control over the employment conditions of the employer's workers, that entity becomes liable as a "joint employer" under anti-discrimination law. *Rivas*, 929 F.2d at 820 n. 17.

 Although ISH is not plaintiff's employer within the conventional meaning of the term, it may be considered her employer if it exercises control over an important aspect of her employment. *Carparts Distribution Center, Inc.*, 37 F.3d at 17; *New York State Dept. of Motor Vehicles*, 82 F.Supp.2d at 46 (defendant may be liable under Title VII if it interferes with plaintiff's employment opportunities with a third party and the defendant controls access to those opportunities). Factors to be considered in determining whether an entity is a joint employer are whether it: 1) supervises the employee's day-to-day activities, 2) has the authority to hire or fire

employees, 3) promulgates work rules and conditions of employment, 4) controls work assignments and 5) issues operating instructions. *Rivas,* 929 F.2d at 820.

■ ISH is a consulting firm and contracted with UMMC to provide consulting services. The facts alleged in the complaint indicate that ISH did not supervise plaintiff's day to day activities, hire or fire employees, control work assignments, issue operating instructions or conduct any other activities commonly performed by employers. ISH was not, therefore, plaintiff's joint employer.

■ The only relationship between the plaintiff and ISH was the appointment of Corbett, an employee of ISH, as Interim Director of the Materials Management Department of UMMC. As the title of the position indicates, it is supervisory and, from the facts alleged in the complaint, Corbett had authority to fire Orell. The Court must, therefore, determine whether ISH can be vicariously liable for Corbett's alleged discrimination under principles of agency law.

■ The Supreme Court has established that an employer is vicariously liable under Title VII for the discriminatory acts of its supervisors if those acts result in a tangible employment action. *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 762–63, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 790, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Such vicarious liability is found where there is a tangible employment action because the supervisor could not have taken such action absent his or her agency relationship with the employer. *Ellerth,* 524 U.S. at 761–62, 118 S.Ct. 2257.

■ The decisions in *Ellerth* and *Faragher* were based on principles of agency law. *Ellerth,* 524 U.S. at 754, 118 S.Ct. 2257 (agency law applies because Title VII

defines "employer" to include agents). Because the term "employer" is also defined under the ADA and the ADEA to include "agents," principles of agency law control whether an employer is liable for the discriminatory acts of its supervisor. *See EEOC v. Wal–Mart Stores, Inc.,* 187 F.3d 1241, 1247 (10th Cir.1999) (applying vicarious liability in disability discrimination case brought under ADA); *Dockery v. Dayton Hudson Corp.,* 2000 WL 1100346 (N.D.Ill.2000) (same with respect to ADEA).

■ Under principles of agency law, a "master" is liable for the torts of his "servants committed while acting within the scope of their employment." Restatement (Second) of Agency § 219(1). Although the complaint is far from lucid, Orell appears to allege that Corbett terminated her employment and failed to promote her because of her age and handicap. Based on those allegations, the termination of Orell's employment was an action taken within the scope of Corbett's employment. Restatement (Second) Agency §§ 228(1)(c), 230 (conduct is within scope of employment if it is of the kind agent was employed to perform and it was "actuated, at least in part, by a purpose to serve his employer").

■ Under Section 227 of the Restatement, "a servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services." Factors to be considered in determining whether one is an employee of another are the extent of control the employer has over the employee's work, whether the work is done under the direction of the employer, the length of time for which the employee is employed and whether or not the parties believe they are creating an employment relation-

ship. Restatement (Second) of Agency § 220.

According to the facts alleged in the complaint, Corbett was, at all relevant times, acting in the capacity of an employee of UMMC rather than ISH. He was contracted out by ISH to work as the Interim Director of a UMMC department. His hiring and firing decisions were made in that capacity and with the purpose of serving UMMC. ISH cannot, therefore, be vicariously liable for the alleged discriminatory decisions, if any, made by Corbett as Interim Director of the Materials Management Department of UMMC.

### 3. Individual Liability

■ Although the First Circuit Court of Appeals has declined to determine whether individuals can be held liable under the federal anti-discrimination statutes, almost all circuits that have addressed the issue have determined that individual liability is not authorized. *See e.g. Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir.1999) (ADA); *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180–181 (4th Cir.1998) (Title VII); *Wathen v. General Electric Co.*, 115 F.3d 400, 405–06 (6th Cir.1997); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (ADA); *Dici v. Pennsylvania*, 91 F.3d 542, 551–52 (3d Cir.1996) (Title VII); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–1317 (2d Cir.1995) (Title VII); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.1995) (Title VII); *E.E.O.C. v. AIC Sec. Investigations, Inc.*, 55 F.3d 1276, 1279–82 (7th Cir.1995) (Title VII).

Most district courts in this circuit have also determined that the statutes do not invoke individual liability. *Wright v. CompUSA, Inc., et al.*, 183 F.Supp.2d 308, 310 (D.Mass.2001) (claim against individual supervisor must be dismissed on ground that ADA precludes individual liability);

*Vizcarrondo v. Board of Trustees of University of Puerto Rico*, 139 F.Supp.2d 198, 201 (D.P.R.2001) (dismissing claims against individual defendant on grounds that ADA, ADEA and Title VII do not permit individual liability); *Ali v. University of Massachusetts Medical Center*, 140 F.Supp.2d 107, 109 (D.Mass.2001) (same with respect to ADA); *Lemire v. Silva, et al.*, 104 F.Supp.2d 80, 92 (D.Mass.2000) (same); *Horney v. Westfield Gage Co.*, 95 F.Supp.2d 29, 33 (D.Mass.2000) (Title VII). On the basis of such pervasive legal precedent, this Court finds that Defendant Paul Corbett cannot, as a matter of law, be held individually liable for discrimination under the ADA or the ADEA.

### B. Plaintiff's State Discrimination Claims

Plaintiff claims that ISH and Corbett discriminated against her based on her age and handicap in violation of the Massachusetts Anti-discrimination Law, M.G.L. c. 151B § 4.

Chapter 151B § 4 makes it an unlawful practice:

[f]or an employer in the private sector, by himself or his agent, because of the age of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification ... [or]

[f]or any employer, personally or through an agent, to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person.

M.G.L. c. 151B §§ 4(1B) and (16).

Similar to the federal anti-discrimination statutes, Chapter 151B prohibits discrimi-

nation by an employer or its agent. Based on the agency principles discussed above, ISH cannot be vicariously liable for the alleged discrimination exercised by Corbett because, on the alleged facts, he was not acting as an agent for ISH at all times relevant to this case.

■■■ Unlike the federal anti-discrimination statutes, however, Chapter 151B provides for individual liability. Chapter 151B states that it is unlawful for:

> any person whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or attempt to do so.

M.G.L. c. 151B § 4. Although the Massachusetts Supreme Judicial Court has not yet established whether supervisors are subject to individual liability under that statute, the Massachusetts Appeals Court has interpreted it to allow for personal liability under the theory of aiding and abetting. *See Beaupre v. Cliff Smith & Associates,* 50 Mass.App.Ct. 480, 491, 738 N.E.2d 753 (2000).

The defendants argue that *Beaupre* only applies in sexual harassment cases where the defendant supervisor was personally *responsible* for the discriminatory conduct but nothing in *Beaupre* limits its holding to cases involving sexual harassment. There, the Court stated that 1) the plain language of the statute provides for individual liability in many of its sections and 2) imposing individual liability is consistent with the mandate of M.G.L. c. 151B § 9 that the provisions of the chapter must be construed liberally to discourage discriminatory conduct. *Id.* at 491–92, 738 N.E.2d 753.

■■■ Construed in the light most favorable to the plaintiff, she has sufficiently alleged that Corbett terminated her employment or was, at the very least, involved in that decision. She further alleges that such action was taken on the basis of her age and disability. Such allegations are sufficient at this stage of the proceedings to state a claim against Corbett individually for discrimination in violation of M.G.L. c. 151B.

## C. Plaintiff's "Whistleblower" Claims

In Count XVII, plaintiff alleges that the defendants violated the whistleblower provision of the False Claims Act, 31 U.S.C. § 3730(h) ("FCA"), and the Commonwealth's whistleblower statute. M.G.L. c. 149 § 185, by terminating her employment in retaliation for her disclosing the falsification of time records by certain employees.

Defendants respond that plaintiff's claims under 31 U.S.C. § 3730(h) and M.G.L. c. 149 § 185 must be dismissed because, like the anti-discrimination statutes, the whistleblower statutes do not recognize individual liability and neither ISH nor Corbett were plaintiff's employers within the meaning of that statute. Defendants cite no law in support of their argument.

■■■ The FCA, 31 U.S.C. §§ 3729–31 penalizes persons who submit fraudulent bills to the government. *United States v. O'Connell, et al.,* 890 F.2d 563, 568 (1st Cir.1989). The whistleblower provision was enacted "to make employees feel more secure in reporting fraud to the United States." *Tighe v. Career Systems Development Corp.,* 915 F.Supp. 476, 485 (D.Mass.1996).

> By virtue of § 3730(h):
> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employ-

ee in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

██ The FCA does not define the term "employer." Unlike the federal anti-discrimination statutes, the whistleblower provision does not explicitly extend the definition of employer to include agents of the employer. However, the First Circuit Court of Appeals has determined that a corporation can be held vicariously liable for the fraud of its agents committed against the government under § 3729 of the FCA. *O'Connell*, 890 F.2d at 568. The Court need not determine whether vicarious liability exists under § 3730(h) because even if it does, according to the facts alleged in the complaint, Corbett was acting as an agent of UMMC, not ISH. The plaintiff's claim against ISH for retaliation under 31 U.S.C. § 3730(h) will, therefore, be dismissed.

██ There is no First Circuit case law addressing the issue of whether § 3730(h) imposes individual liability. However, other courts which have considered the issue have conclusively determined that such liability cannot be imposed. *See e.g., Palladino ex rel. United States v. VNA of S.N.J., Inc.*, 68 F.Supp.2d 455, 464 (D.N.J. 1999); *Miller v. Bunce, et al.*, 60 F.Supp.2d 620, 624 (S.D.Tex.1999); *Mruz, et al. v. Caring, Inc., et al.*, 991 F.Supp. 701, 709 (D.N.J.1998); *United States ex rel. Lamar v. Burke, et al.*, 894 F.Supp. 1345, 1348 (E.D.Mo.1995) (analyzing issue according to Title VII precedent).

In determining that there is no individual liability under the federal whistleblower statute, the United States District Court for the District of New Jersey in *Mruz* reasoned that because Congress provided for liability for fraud by those who are not

employers under 31 U.S.C. § 3729, it knew how to provide liability for non-employers if it had so intended. *Id.* at 709. This Court agrees with that reasoning and will, therefore, dismiss plaintiff's retaliation claim against Corbett under 31 U.S.C. § 3730(h).

██ The Massachusetts counterpart to 31 U.S.C. § 3730(h) states:

An employer shall not take any retaliatory action against an employee because the employee ... [d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer ... that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law.

M.G.L. c. 149 § 185(b)(1). The statute defines "employer" as:

the commonwealth, and its agencies or subdivisions, including but not limited to, cities, towns, counties, regional school districts, or any authority, commission, board or instrumentality thereof.

M.G.L. c. 149 § 185(a)(2). The plain language of the statute does not support the imposition of individual liability. The definition enumerates several entities considered to be employers within the meaning of the statute but does not contain terms suggesting an intent to establish individual liability.

There is no Massachusetts case on point determining whether individuals can be held liable under M.G.L. c. 149 § 185. In *Fisher v. Commonwealth of Massachusetts*, 2001 WL 1249650 (Aug. 23, 2001), the Superior Court of Massachusetts construed the applicability of the term "employer" in § 185. In *Fisher*, the plaintiff state police officer brought a claim for retaliation pursuant to § 185 against the Commonwealth, its Department of State Police and various officers of that Depart-

ment. *Id.* at *1. The Court dismissed the claim against the Commonwealth on the ground that a retaliation claim under the state whistleblower statute "can only be prosecuted against one's *employer*". The Court elaborated:

> Although the definition of "employer" does include the Commonwealth and any of its agencies or political subdivisions, its meaning plainly intends the action be brought against one's employer and that it did not intend to include everyone who might be considered in the chain of command.

*Id.* at *4. Under the Superior Court's strict interpretation of the term "employer", an individual supervisor would not be considered an employer within the meaning of the statute. Plaintiff's state whistleblower claim against Corbett will, therefore, be dismissed.

 With respect to plaintiff's whistleblower claims against ISH under Massachusetts law, again, ISH was not Orell's employer and is not vicariously liable for acts of Corbett related to the instant action. The state law whistleblower claim against ISH will, consequently, be dismissed.

### D. Breach of Contract

The complaint contains three counts labeled "Count XIV" the first two of which allege, respectively, that Corbett and ISH breached Orell's employment contract. Defendants seek to dismiss the breach of contract claims because no contract existed between the plaintiff and Corbett or between the plaintiff and ISH. Plaintiff responds that Corbett, as an authorized agent of UMMC, breached her contract of employment when he terminated her and that she was an intended third party beneficiary of the contract between ISH and UMMC.

 In order to state a claim for breach of contract, plaintiff must allege facts sufficient to show that an express or implied binding agreement existed between her and the defendants. *Flattery v. Gregory, et al.*, 397 Mass. 143, 145, 489 N.E.2d 1257 (1986); *Choate, Hall & Stewart v. SCA Services, Inc.*, 378 Mass. 535, 543, 392 N.E.2d 1045 (1979). Orell alleges that she was employed by UMMC and that ISH and UMMC entered into an agreement for consulting services. She fails, however, to identify any agreement, express or implied, between her and Corbett or between her and ISH.

Orell argues vaguely that she adequately alleges a claim for breach of contract against Corbett because he was an agent of UMMC. She asserts that she began her employment with UMMC in 1971 and that Corbett was hired in 1997 but her employment agreement, if any, was with UMMC, not Corbett. Her complaint contains no allegation that she had an employment agreement with Corbett and even though Corbett may have been UMMC's agent, he does not thereby become liable under its contracts. Restatement (Second) of Agency § 328.

 A plaintiff may sue for breach of a contract to which she is not a party where she is a third-party beneficiary of that contract. *Monahan v. Town of Methuen*, 408 Mass. 381, 391, 558 N.E.2d 951 (1990); *Flattery*, 397 Mass. at 148, 489 N.E.2d 1257; *Rae v. Air–Speed, Inc., et al.*, 386 Mass. 187, 194, 435 N.E.2d 628 (1982). A third party is an intended beneficiary of a contract if:

> recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties to the contract and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances in-

dicate that the promisee intends to give the beneficiary the benefit of the promised performance. *Flattery*, 397 Mass. at 148–49, 489 N.E.2d 1257. The agreement between UMMC and ISH was for consulting services to be provided by ISH. The alleged facts do not support a claim that the purpose of the contract was to benefit Orell or that she otherwise had a right to performance of the agreement. Because plaintiff has failed to allege privity of contract between her and the defendants or that she was a third-party beneficiary to the contract between UMMC and ISH, her breach of contract claims against Corbett and ISH will be dismissed.

Furthermore, because a claim for breach of the covenant of good faith and fair dealing exists only where there is an enforceable contract between the parties, *see Bateman v. Federal Deposit Insurance Corp.*, 112 F.Supp.2d 89, 97 (D.Mass.2000), that claim against Corbett and ISH (Count XIII) will also be dismissed.

### E. Intentional Interference with Contractual Relations

In the third "Count XIV", plaintiff alleges that defendant Corbett intentionally interfered with plaintiff's employment contract with UMMC by terminating her. Corbett seeks to dismiss that claim on the ground that he did not participate in the decision to terminate plaintiff from her employment.

█ In order to state a claim for intentional interference with contractual relations, the plaintiff must allege that 1) she had a contract with a third party, 2) the defendant knowingly induced the third party to break that contract, 3) the defendant's interference, in addition to being intentional, was improper in motive or means, and 4) she was harmed by the defendant's actions. *Melo–Tone Vending,*

*Inc. v. Sherry, Inc.*, 39 Mass.App.Ct. 315, 318, 656 N.E.2d 312 (1995).

█ Plaintiff alleges that she had an employment contract with UMMC and that Corbett wrote the letter terminating her from her employment. She also alleges she suffered economic damages as a result of her discharge. A determination of the defendant's motive and state of mind is premature at this stage of the litigation, and, because all reasonable inferences are drawn in favor of the plaintiff, she has adequately met her burden of stating a claim for intentional interference with contractual relations.

### F. Wrongful Discharge

█ A plaintiff has a cause of action in tort for wrongful discharge when she is an at-will employee and is discharged in violation of public policy. *Acciavatti v. Professional Services Group, Inc.*, 982 F.Supp. 69, 74 (D.Mass.1997); *Folmsbee v. Tech Tool Grinding & Supply, Inc.*, 417 Mass. 388, 394, 630 N.E.2d 586 (1994). Only an at-will employee can avail herself of a cause of action for wrongful discharge, *Acciavatti*, 982 F.Supp. at 74, and plaintiff does not specifically allege that she was an at-will employee. In fact, she alleges that her employment was governed by an employment contract. Because the complaint is ambiguous, however, this Court will afford plaintiff the benefit of the doubt and presume that Orell has alleged that she was an at-will employee.

█ Again, because ISH was not plaintiff's employer, her claim against it for wrongful termination will also be dismissed. *Acciavatti v. Professional Services Group, Inc.*, 982 F.Supp. 69, 74 (D.Mass.1997) (plaintiff must be an at-will employee of defendant to maintain cause of action for wrongful discharge).

Under principles of agency law, an agent who commits a tort is not relieved from liability because he acted at the command or on account of the principal. Restatement (Second) of Agency § 343; *Refrigeration Discount Corp. v. Catino*, 330 Mass. 230, 235, 112 N.E.2d 790 (1953) (citing *Kennedy v. Shain, et al.*, 288 Mass. 458, 459, 192 N.E. 924 (1934)). If it is determined that Corbett was acting as UMMC's agent, Corbett may be liable to plaintiff for the tort of wrongful discharge. Construed in the light most favorable to the plaintiff, her allegations are sufficient to state a claim for wrongful discharge against Corbett.

## G. Defamation

Plaintiff alleges in Count XVI that Corbett's December 30, 1997 termination letter was defamatory. Defendants seek to dismiss Count XVI on the ground that they had a conditional privilege to publish the letter.

Defamation is the publication, without privilege, of a false statement of fact which causes damage to the plaintiff's reputation. *Correllas v. Viveiros*, 410 Mass. 314, 319, 572 N.E.2d 7 (1991). Plaintiff claims that the letter of termination written by Corbett and sent to her was defamatory. However, she fails to allege that the letter was published to or seen by anyone other than herself. Her defamation claim against all defendants will, consequently, be dismissed. *Khalil v. Museum of Science*, 2000 WL 1372485, *3–4, 2000 Mass.Super. LEXIS 386, *9–10 (Aug. 18, 2000) (defamatory matter must have been communicated to someone other than the plaintiff).

Because Orell has failed to state a claim for defamation, it is unnecessary to consider whether she has alleged facts sufficient to support a claim that defendants abused their privilege to publish defamatory information reasonably necessary to serve a legitimate business interest. *See Bratt v. International Business Machines Corp., et al.*, 392 Mass. 508, 509, 467 N.E.2d 126 (1984) (An employer has a conditional privilege to publish defamatory statements about an employee when "the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job."); *McCone, et al. v. New England Telephone and Telegraph Co.*, 393 Mass. 231, 235, 471 N.E.2d 47 (1984) (The privilege is lost through unnecessary, unreasonable or excessive publication upon proof that the employer published the defamatory information recklessly).

## H. Intentional Infliction of Emotional Distress

Plaintiff alleges in Count XV that the defendants' actions of defaming her and discriminating against her on the basis of her disability constituted extreme and outrageous behavior and were committed with the intent to cause her extreme emotional distress. Under Massachusetts law, a plaintiff alleging intentional infliction of emotional distress must show:

(1) that the [defendants] intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct;

(2) that the conduct was extreme and outrageous;

(3) that the actions of the defendants were the cause of the plaintiff's distress; and

(4) that the emotional distress sustained by the plaintiff was severe.

*Haddad v. Gonzalez*, 410 Mass. 855, 871, 576 N.E.2d 658 (1991). Conduct is extreme and outrageous if it goes "beyond all possible bounds of decency and is utterly

intolerable in a civilized community." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145, 355 N.E.2d 315 (1976). It is for the court to decide whether the defendant's conduct may be reasonably regarded as so extreme as to permit recovery. *See Caputo v. Boston Edison Co.*, 924 F.2d 11, 14 (1st Cir.1991).

▇ In this case, the plaintiff identifies as outrageous conduct defendant's 1) termination of her employment by means of false accusations, 2) mischaracterization of her opinions, 3) malicious defamation and 4) disability discrimination. Insofar as plaintiff's allegations of disability discrimination form the basis of her intentional infliction of emotional distress claim, she is precluded from recovering separate damages. *Kilroy v. Husson College*, 959 F.Supp. 22, 23 (D.Me.1997) (plaintiff cannot recover separate emotional damages for employment discrimination that is covered by the ADA); *Stewart v. United States*, 2000 WL 1705657, *13–14, 2000 U.S.Dist. LEXIS 17151, *48–50 (N.D.Cal. 2000) (same with respect to Title VII).

[40] Even if plaintiff's claim for intentional infliction of emotional distress based upon her allegations of disability discrimination were not preempted, the alleged facts supporting her claim of disability do not rise to the level of behavior that is utterly intolerable in a civilized community. Plaintiff claims that defendants failed to make reasonable accommodations for her disability. Such conduct does not satisfy the stringent standard of a claim for intentional infliction of emotional distress. *See e.g. Ramsey v. United Airlines, Inc.*, 2000 WL 1367947, *11–12, 2000 U.S.Dist. LEXIS 13775, *32–33 (N.D.Ill.2000) (failure of employer to transfer employee in order to accommodate his disability does not rise to the level of extreme and outrageous behavior); *Garrett v. Autozone, Inc.*, 71 F.Supp.2d 617, 622 (E.D.Tex.1999) (ter-

mination based on disability did not support claim for intentional infliction of emotional distress); *Parker v. Noble Roman's, Inc.*, 1997 WL 839138, *8–9, 1997 U.S.Dist. LEXIS 22885, *23–24 (S.D.Ind.1997) (failure to accommodate disability is not extreme and outrageous conduct).

▇ The other actions cited by plaintiff likewise do not constitute extreme and outrageous conduct as that term is defined under Massachusetts law. To establish liability for intentional infliction of emotional distress, plaintiff must establish more than "tortious or even criminal intent" or that the employer has "intended to inflict emotional distress, or even that [their] conduct has been characterized by malice or a degree of aggravation." *Tetrault v. Mahoney, Hawkes & Goldings, et al.*, 425 Mass. 456, 466, 681 N.E.2d 1189 (1997) (quoting *Foley v. Polaroid Corp.*, 400 Mass. 82, 99, 508 N.E.2d 72 (1987). Assuming the facts alleged by plaintiff are true, they do not constitute behavior that is "utterly intolerable in a civilized society." *Agis*, 371 Mass. at 145, 355 N.E.2d 315.

▇ Moreover, plaintiff has failed to allege that she "suffered distress so severe that no reasonable person could be expected to endure it." *Lane v. Memorial Press, Inc.*, 2000 WL 559547, *5, 2000 Mass.Super. LEXIS 99, *17 (2000). Plaintiff alleges in conclusory fashion that she suffered humiliation, great personal loss, loss of reputation and other economic and non-economic damages. Those allegations are insufficient to support a claim for extreme and severe emotional distress. *See e.g. Simon*, 385 Mass. at 93, 431 N.E.2d 556 (plaintiff suffered distress so severe that she was unable to care for her children and sought psychiatric counseling); *see also Boyle*, 378 Mass. at 594, 392 N.E.2d 1053 (plaintiff suffered distress so severe that she hemorrhaged).

## I. Infringement of Right of Free Speech

In Count X, plaintiff alleges that defendants terminated her employment in retaliation for the exercise of her rights of free speech.

The First Amendment to the United States Constitution and Article XVI of the Massachusetts Constitution protect the rights of free speech and assembly from abridgement by the government. *Columbia Broadcasting System, Inc. v. Democratic National Committee,* 412 U.S. 94, 114, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973); *Bertulli v. First National Stores, Inc.,* 1979 WL 15347, 1979 U.S.Dist. LEXIS 9792, *5 (D.Mass.1979); *Commonwealth v. Noffke,* 376 Mass. 127, 134, 379 N.E.2d 1086 (1978). Defendants argue that plaintiff's claims must be dismissed because the First Amendment and Article XVI apply only to government action. The Court is aware that plaintiff's claims are also facially deficient for an entirely different reason.

■ Plaintiff's constitutional claims cannot be brought directly under the First Amendment to the U.S. Constitution or Article XVI of the Massachusetts Constitution. To bring a claim of a violation of the former, a plaintiff must allege a cause of action under 42 U.S.C. § 1983. *Diaz v. City of Fitchburg,* No. 94–40157, 1997 U.S.Dist. LEXIS 2353, *32–33 (D.Mass.). To bring a claim of a violation under the Massachusetts Constitution, plaintiff must allege a cause of action under the Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H and 11I. *Grubba v. Bay State Abrasives, Division of Dresser Industries, Inc.,* 803 F.2d 746, 748 (1st Cir.1986); *Martino v. Hogan, et al.,* 37 Mass.App.Ct. 710, 711, 643 N.E.2d 53 (1994). Plaintiff has done neither and her federal and state constitutional claims in Count X will, therefore, be dismissed as against all defendants.

## J. Retaliation

Orell's retaliation claim (Count XI) is confusing and unclear. She alleges that the adverse employment action by defendants was conducted in retaliation for the exercise of her free speech rights. As explained above, to the extent plaintiff claims a violation of her rights under the First Amendment and Article XVI, she must allege a cause of action under 42 U.S.C. § 1983 and M.G.L. c. 12 §§ 11H and 11I, respectively, which she has not done.

She also alleges in her retaliation claim that defendants deprived her of her rights under M.G.L. c. 151B and Title VII. Because plaintiff makes no allegation that she was discriminated against based on her race, sex, national origin, color or religion, her retaliation claim, insofar as it is brought under Title VII, will be dismissed.

■ Plaintiff may maintain a cause of action for discriminatory retaliation based on age and/or disability under M.G.L. c. 151B § 4 if she shows that 1) she reasonably and in good faith believed her employer was engaged in wrongful discrimination, 2) she acted reasonably in response to her belief, and 3) her employer's desire to retaliate against her was a motivating factor in deciding whether to take an adverse employment action. *Tate v. Dept. of Mental Health,* 419 Mass. 356, 645 N.E.2d 1159 (1995). She has not yet stated such a cause but her pending claim for retaliation will be dismissed without prejudice and with leave to file an amended claim for retaliation if desired.

## ORDER

For the reasons set forth in the Memorandum above:

1) the motion of defendant ISH to dismiss (Docket No. 4) is ALLOWED in its entirety;

2) the motion of defendant Paul Corbett to dismiss (Docket No. 4) is, with respect to Counts I, II, III, VI, VII, VIII, X, XIII, XIV (breach of contract), XIV (breach of contract), XV, XVI, XVII and XVIII, ALLOWED, and is otherwise DENIED;

3) all claims for money damages against Paul Corbett in his official capacity are DISMISSED;

4) Count XI is DISMISSED without prejudice and with leave to amend within 30 days of the date of this order; and

5) Counts II, VI, X, XV, XVI and XVIII against defendant, UMMC, are DISMISSED *sua sponte.*

So ordered.