# United States Court of Appeals
## For the First Circuit

No. 02-1693

ARMANDO VESPRINI,
Plaintiff, Appellant,

v.

SHAW CONTRACT FLOORING SERVICES, INC.,
AND SHAW INDUSTRIES, INC.,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Lynch, Circuit Judge,

Cyr, Senior Circuit Judge,

and Lipez, Circuit Judge.

Richard L. Yospin for appellant.
Allison K. Romantz, with whom Robert P. Joy, Maura D. McLaughlin, and Morgan, Brown & Joy, LLP, were on brief for appellees.

December 30, 2002

**CYR, <u>Senior Circuit Judge</u>.** Appellant Armando Vesprini challenges various summary judgment rulings which led to the dismissal of his age-discrimination, breach-of-contract, and constructive-discharge claims against his former employers, Shaw Contract Flooring Services, Inc. ("SCFSI") and Shaw Industries, Inc. ("Shaw").

**I**

<u>BACKGROUND</u>

Circle Floors, Inc., a Massachusetts-based flooring retailer and installer, was founded by Vesprini in 1960.[1] In April 1997, after serving as its president for thirty-seven years, the seventy-one-year-old Vesprini, as well as his son Michael, sold their Circle Floors, Inc. stock to Shaw, a Georgia-based corporation. In addition, Vesprini entered into a three-year contract to remain on as the president of Circle Floors. At about the same time, Shaw acquired Continental Carpets, another Massachusetts flooring company, which directly competed with Circle Floors.

A few months later, in October 1997, Vesprini executed a "Standards of Ethical Conduct Agreement." The agreement specifically prescribed that Vesprini's "use of vulgar or

---

[1] Summary judgment rulings are reviewed <u>de novo</u>, after assessing all the competent evidence and its attendant reasonable inferences in the light most favorable to the nonmoving party, <u>viz.</u>, Vesprini. <u>Gonzalez</u> v. <u>El Dia, Inc.</u>, 304 F.3d 63, 68 (1st Cir. 2002).

unprofessional language on company premises or at any time while engaged in the performance of company duties [was to be] strictly prohibited," and that "failure to abide by this Agreement may be grounds for . . . termination . . . without any further notice and without any requirement of progressive discipline."

Thereafter, Shaw hired forty-one-year-old Scott Mahan to investigate whether Circle Floors and Continental Carpets were continuing to compete for the same clientele. In due course, Mahan reported that there remained a significant overlap. Whereupon, after consulting with Vesprini, Shaw decided to consolidate its Massachusetts operations, including Circle Floors and Continental Carpets, into a single corporate entity (<u>viz.</u>, "SCFSI"). Scott Mahan was named as its president.

Vesprini suspected that Shaw was replacing him as the Circle Floors president, due to his age. Additionally, Vesprini's immediate supervisor, Jay Houston, advised Vesprini that he was "not going to be [with Shaw] much longer," that the time had come to "step back and let the young stallions run the [day-to-day] business," but that Vesprini nevertheless would serve as Circle Floors' "chief executive officer" and as a "mentor" to both Mahan and Vesprini's son, Michael.

Shortly thereafter, upon being pressed by Vesprini, Houston gave Vesprini assurances that he remained "the boss." In reliance upon the Houston assurance, Vesprini withheld any

objection to Mahan's appointment as the president of SCFSI, because he believed that he was to retain the ultimate decisionmaking authority as to all business decisions relating to the "Circle Floors" division of SCFSI.

By December 1997, however, after Vesprini had come to the realization that Mahan had taken over virtually all the day-to-day operations of the merged companies, Vesprini transmitted a memorandum to Mahan requesting that he be copied on all important correspondence. Mahan simply ignored the request. Instead, Mahan informed Vesprini: "[Y]ou don't know how to run the business." and "[You are not] going to be here much longer." Mahan added that Vesprini should go play golf in Florida. Finally, Mahan maintained that Houston was not telling the truth when he gave the assurance that Vesprini would remain the "boss."

At a January 1998 meeting, Hal Long, Shaw's executive vice president, unequivocally advised Vesprini that Mahan was now his boss. Vesprini in turn advised Long that he intended to consult an attorney. In a follow-up letter, Houston informed Vesprini that Shaw intended to "relieve[] [Vesprini] of some of the more mundane operational responsibilities [in order that] [Vesprini would] have the time to become a needed mentor to both Scott [Mahan] and Michael [Vesprini]."

SCFSI moved into new and more spacious corporate office quarters in June 1999. Vesprini regarded the small, windowless

4

office assigned to him "[in]consistent with an office for a chief executive officer."  Moreover, every employee except Vesprini was issued a new company business card.

On October 27, 1999, while Mahan was absent on extended sick leave, Paul Ritzel, director of operations, and Suzanne Grubis, a sales manager, overheard a conversation between Vesprini and his son, during which the senior Vesprini loudly proclaimed that "Suzanne Grubis is going to f--- you," apparently referring to a reassignment of an important sales account from Vesprini's son to Grubis.  Ritzel and Grubis immediately confronted Vesprini regarding this crude remark, at which point Vesprini admittedly "lost his cool," and once again resorted to profanity.[2]

The October 1997 Standards of Ethical Conduct Agreement empowered Shaw immediately to terminate Vesprini's employment due to these profane outbursts.  Shaw nevertheless permitted Vesprini to remain until his three-year employment contract expired in April 2000, with full salary and benefits, on the condition that Vesprini not enter the corporate offices without prior permission from Houston, and that Vesprini remain available to provide business advice to Shaw as required.

After submitting, then withdrawing, his complaint before

---

[2]Ritzell asserted that Vesprini stated, among other things: "[G]et off your f---ing ass"; Ritzell "should be in that f---ing estimating department" drumming up business, instead of planning his office decor; Ritzell is "full of bull----," and Mahan is a "f---ing ---hole."

5

the Massachusetts Commission Against Discrimination (MCAD), Vesprini proceeded to lodge a three-count complaint in the Commonwealth courts, which Shaw subsequently removed to the United States District Court for the District of Massachusetts. The complaint alleged that the above-described actions taken by Shaw (i) violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., as well as its Commonwealth counterpart, Mass. Gen. Laws ch. 151B, § 1 et seq.; (ii) breached the employment contract; and (iii) constituted a constructive discharge, all of which resulted in emotional distress and the loss of annual incentive bonuses.

The district court ruled that even though Vesprini had adduced "direct evidence" of Shaw's age-based animus, no rational factfinder could determine either that any such animus constituted a precipitating factor in Shaw's employment decisions, or that Shaw's alleged breach of the employment contract had occasioned the loss of any bonuses to Vesprini. Vesprini v. Shaw Indus., Inc., 221 F. Supp. 2d 44, 60, 61-62 (D. Mass. 2002).

## II

## DISCUSSION

### A. "Mixed Motives"

Vesprini contends on appeal that the summary judgment ruling was unwarranted, since he generated a trialworthy factual dispute — as to whether the defendants had discriminated on the

6

basis of his age — simply by establishing, <u>inter alia</u>, the remarks made by Houston and Mahan in 1997 regarding his age pursuant to the "mixed-motive" standard of proof, <u>see</u> <u>Price Waterhouse</u> v. <u>Hopkins</u>, 490 U.S. 228, 266-67 (1989) (O'Connor, J., concurring). Under this standard:

> When a[n] [employee] presents <u>direct</u> <u>evidence</u> of age discrimination, the [employer] must then either "deny the validity or the sufficiency of the [employee's] evidence," and "[have] the jury . . . decide[] whether the [employee] has proved discrimination by a preponderance of the evidence," or "prove that it would have made the same decision even if it had not taken the protected characteristic into account."

<u>Dominguez-Cruz</u> v. <u>Suttle Caribe, Inc.</u>, 202 F.3d 424, 429 (1st Cir. 2000) (emphasis added; citations omitted).[3]

As Vesprini adduced no competent "direct evidence" of Shaw's age-based animus, however, he failed to generate any trialworthy issue of fact enabling him to invoke the <u>Price Waterhouse</u> paradigm. Although its exact contours remain somewhat murky, the term "direct evidence" normally contemplates only those "'statements by a decisionmaker that directly reflect the alleged animus and <u>bear</u> <u>squarely</u> <u>on</u> <u>the</u> <u>contested</u> <u>employment</u> <u>decision</u>.'"

---

[3]In the district court, Vesprini engaged both the <u>Price Waterhouse</u> and <u>McDonnell Douglas</u> standards of proof. <u>See</u> <u>infra</u> Section II.B; <u>Fernandes</u> v. <u>Costa Bros. Masonry, Inc.</u>, 199 F.3d 572, 581 (1st Cir. 1999) (noting that plaintiff "may elect to proceed simultaneously on both fronts" and "the trial court, at an appropriate stage of the litigation, will channel the case into one format or the other").

7

<u>Melendez-Arroyo</u> v. <u>Cutler-Hammer de P.R. Co.</u>, 273 F.3d 30, 35 (1st Cir. 2001) (quoting <u>Febres</u> v. <u>Challenger Caribbean Corp.</u>, 214 F.3d 57, 60-61 (1st Cir. 2000)) (emphasis added). There were nonesuch in the present case.

First, the remarks by Houston and Mahan were made some one and one-half to <u>two</u> <u>years</u> <u>before</u> Shaw's November 1999 decision to exclude Vesprini from its business premises.[4] The lack of temporal proximity between these remarks and the ensuing disciplinary action by Shaw severely undermines the reasonableness of any inference that there existed a causal relationship between

_____

[4]Vesprini further contends that the district court should have permitted him to recover for all the allegedly discriminatory acts, <u>see</u> <u>Vesprini</u>, 221 F. Supp. 2d at 53-54, even those which occurred more than 300 days prior to the MCAD discrimination charge (<u>e.g.</u>, Mahan's appointment as Circle Floor's <u>de</u> <u>facto</u> president). On the contrary, such "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." <u>Nat'l R.R. Passenger Corp.</u> v. <u>Morgan</u>, 122 S. Ct. 2061, 2072 (2002). Nevertheless, Vesprini may use "the[se] prior [time-barred] acts as <u>background</u> <u>evidence</u> in support of [any] timely claim." <u>Id.</u> (emphasis added).

Furthermore, we must reject Vesprini's contention that the June 1999 actions, assigning him to a "small" office and failing to order new business cards for him — though within the 300-day limitations period — were discrete, actionable "adverse employment actions" under the ADEA. Vesprini admitted that (i) Shaw consulted him, prior to relocating SCFSI's corporate headquarters, to determine whether he wished to prescribe any specifications in regard to his new office assignment, (ii) he elected to state no preferences, and (iii) he never complained afterwards. Moreover, deeming the "business card" matter a mere "oversight," Vesprini lodged no complaint with Shaw. <u>See</u>, <u>e.g.</u>, <u>Marrero</u> v. <u>Goya of P.R., Inc.</u>, 304 F.3d 7, 25 (1st Cir. 2002) (noting that minor changes in employment conditions are not materially adverse where, <u>inter</u> <u>alia</u>, employee never saw fit to complain to employer).

8

the remarks and the subsequent decisionmaking by Shaw. <u>See</u> <u>Ayala-Gerena</u> v. <u>Bristol Myers-Squibb Co.</u>, 95 F.3d 86, 97 (1st Cir. 1996).[5]

Second, the comments made by Houston did not unambiguously display an age-based animus. Instead, Houston simply observed a fact of life: since Vesprini was "not going to be [with Shaw] much longer," the time had come for Vesprini (i) to "step back and let the young stallions run the [day-to-day] business," and (ii) to mentor Scott Mahan and Michael Vesprini as the next generation of Shaw executives. <u>See</u>, <u>e.g.</u>, <u>Birkbeck</u> v. <u>Marvel Lighting Corp.</u>, 30 F.3d 507, 511-12 (4th Cir. 1994) (holding that the statement, made two years prior to adverse employment action, that "there comes a time when we all have to make way for younger people," did not create an inference of age discrimination, given that it was stated as a "'truism' with no disparaging overtones")

---

[5]<u>See</u>, <u>e.g.</u>, <u>Kirk</u> v. <u>Hitchcock Clinic</u>, 261 F.3d 75, 78 (1st Cir. 2001) (finding that employer's 1996 remarks, made in connection with earlier time-barred discriminatory decision, were not "direct evidence" relevant to a 1997 employment decision); <u>see also</u>, <u>e.g.</u>, <u>Armbruster</u> v. <u>Unisys Corp.</u>, 32 F.3d 768, 779 (3d Cir. 1994) (finding remarks "too remote in time" to constitute "direct evidence"); <u>Oest</u> v. <u>Ill. Dep't of Corr.</u>, 240 F.3d 605, 611 (7th Cir. 2001) (noting that "temporal proximity is often crucial to the [direct-evidence] inquiry," and that two-year lapse between remark and employment decision "defeat[s] the inference of a 'causal nexus between the remark and decision to discharge'")(citations omitted); <u>Robin</u> v. <u>Espo Eng'g Corp.</u>, 200 F.3d 1081, 1089 (7th Cir. 2000) (same, remarks "two years prior to [employee's] discharge"); <u>Yates</u> v. <u>Douglas</u>, 255 F.3d 546, 549 (8th Cir. 2001) (same, remarks "one to two years" before termination); <u>Scott</u> v. <u>Suncoast Beverage Sales Ltd., PMBA</u>, 295 F.3d 1223, 1227-28 (11th Cir. 2002) (same, remarks "two and one-half years before the termination").

(citation omitted); see also EEOC v. Tex. Instruments, Inc., 100 F.3d 1173, 1181-82 (5th Cir. 1996) (same). As Houston himself was fifty-seven years of age at the time he made these remarks, see 29 U.S.C. § 631(a) (defining the ADEA protected class as persons over forty years of age), it is just as likely that his commiserative statements to Vesprini simply reflected his "non-actionable reflection on generational passage." Birkbeck, 30 F.3d at 512 (discounting comparable remarks by fifty-two-year-old supervisor). Thus, the remarks made by Houston are reasonably susceptible to an entirely benign connotation, neither implausible nor discriminatory. Such inherently ambiguous assertions normally do not constitute "direct evidence" of an age-based animus. See Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 583 (1st Cir. 1999).

Third, although the Mahan comments, arguably at least, may imply something more in the way of an age-based antagonism than do the statements made by Houston, see supra Section I (e.g., suggesting that Vesprini was incompetent at business and should play golf instead), Vesprini adduced no evidence that Mahan was involved in the November 1999 decision by Shaw to exclude Vesprini from its workplace. At that time Mahan was on administrative leave and Houston was the decisionmaker of record. Comments by non-decisionmakers, such as Mahan, normally are not "direct evidence" of age-based animus. See Melendez-Arroyo, 273 F.3d at 35.

10

**B.    <u>Pretext</u>**

As the remarks made by Houston and Mahan are insufficiently probative to constitute "direct evidence" of any age-based animus on the part of Shaw, we need not consider whether or not their remarks established a <u>prima</u> <u>facie</u> case for purposes of the alternative evidentiary model outlined in <u>McDonnell Douglas Corp.</u> v. <u>Green</u>, 411 U.S. 792, 802-04 (1973).  <u>See</u> <u>supra</u> note 3. Even assuming, <u>arguendo</u>, that the Rule 56 proffer by Vesprini contained sufficient circumstantial evidence to establish a <u>prima</u> <u>facie</u> case of age discrimination, the burden of production simply shifted to Shaw to articulate a nondiscriminatory reason for its November 1999 employment decision.  <u>See</u> <u>Melendez-Arroyo</u>, 273 F.3d at 33.  Shaw abundantly met its limited burden of production with its explanation that Vesprini's repeated use of profanity on October 27, 1999, not only warranted expulsion from the workplace, but directly contravened the "Standards of Ethical Conduct Agreement" signed by Vesprini, thus explicitly empowering Shaw to terminate Vesprini on the spot, without first resorting to any form of progressive discipline.  At that juncture, of course, it became incumbent upon Vesprini to bear the burden of establishing that the nondiscriminatory reason relied upon by Shaw was pretextual and that the challenged employment action was motivated by an age-based animus.  <u>See</u> <u>id.</u>  Vesprini failed to meet the burden of proof.

The Rule 56 proffer by Shaw describes, in lurid detail,

11

the profane language used by Vesprini in the workplace.  See supra note 2.  Although Vesprini assertedly recalls using much milder epithets (e.g., "son of a gun" and "God damn"), he nevertheless concedes that he very well may have used the harsher and more offensive profanities ascribed to him.  Consequently, he has failed to establish that the asserted basis for Shaw's decision to bar him from its workplace was pretextual.[6]

**Accordingly, the district court judgment is <u>AFFIRMED</u>.**

---

[6]Similarly, the district court orders dismissing the breach-of-contract and constructive-discharge claims must be affirmed as well.  Not only did the expulsion of Vesprini from the workplace offend no provision in the Employment Agreement, but the parties explicitly contemplated that very prospect in the Standards of Ethical Conduct Agreement.  Moreover, given that Vesprini never resigned, but instead fulfilled the remaining term of the three-year employment contract, no constructive-discharge claim survived. See Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 704 (1st Cir. 1993).

12