Isabel **ACEVEDO MARTINEZ**, Plaintiff,

v.

**COATINGS INC. AND CO. et als., Defendants.**

Civil No. 00–2063 (JAG).

United States District Court, D. Puerto Rico.

March 14, 2003.

Charles S. Hey–Maestre, Nora Vargas–Acosta, San Juan, PR, for plaintiff.

Vivian Nunez–Rodriguez, San Juan, PR, for defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Plaintiff Isabel Acevedo Martinez ("Acevedo") filed suit against her employer Coatings Incorporated and Co. ("Coatings") and its general manager Antonio Vazquez ("Vazquez") (collectively "defendants") under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* Acevedo alleges that defendants discriminated against her on the basis of her age and gender by harassing her, progressively demoting her, and finally terminating her employment in retaliation for filing her discrimination charge. Acevedo has also invoked this Court's supplemental jurisdiction to entertain claims under Law 100 of June 30, 1959, as amended, 20 L.P.R.A. § 146 *et seq.*, ("Law 100"). Pending before the Court are motions for summary judgment by Coatings (Docket No. 50) and Vazquez (Docket No. 52) with a statement of uncontested facts pursuant to Local Rule 311.12. Plaintiff duly opposed both motions (Docket Nos. 68 and 70). For the reasons that follow, the motions are GRANTED in part and DENIED in part.

## SUMMARY JUDGMENT STANDARD

The standard for summary judgment is governed by Fed.R.Civ.P. 56. The court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A contested fact is 'material' when it has the potential to change the outcome of the case. *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997). An issue is genuine if a reasonable jury could resolve the dispute for the nonmoving party. *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to defeat a motion for summary judgment, the party opposing the motion must "present definite, competent evidence to rebut the motion." *Maldonado–Denis*

*v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). The non-moving party must show that a trial-worthy issue exists and must point to specific facts that demonstrate the existence of an authentic dispute. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991). "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Furthermore, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). Nonetheless, the Court must never "weigh the evidence and determine the truth of the matter," *Lipsett v. University of P.R.,* 864 F.2d 881, 895 (1st Cir.1988) (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505), and "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir.1995). The Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). "If, after this canvassing of the material presented, the district court finds that some genuine factual issue remains in the case, whose resolution one way or another could affect its outcome, the court must deny the motion." *Lipsett,* 864 F.2d at 895.

## FACTUAL BACKGROUND

Vazquez and Irving Gurin founded Coatings, a corporation in the business of manufacturing lithographic blankets used for printing. Vazquez recruited Acevedo, a childhood friend, whom he became reacquainted with when they both worked at Davis M Company, prior to the founding of Coatings. Acevedo joined Coatings on May 6, 1974 as General Manager of Research and Development, reporting to Gurin. Initially, Acevedo performed tasks such as inventory, raw and miscellaneous materials purchasing, and shipping. In late 1982, as the workload increased, Acevedo became Purchasing Manager. As such, her duties included purchasing of raw and miscellaneous materials, forecasting the projected needs for the same and keeping the raw material inventory.

In March of 1995, Vazquez transferred the responsibility of conducting physical inventory to the accounting department at Coatings. In June of that year, Vazquez hired Enid Fonseca ("Fonseca"), who was 24 years old at the time and had recently obtained a bachelors degree, as his assistant. He assigned to Fonseca the task of preparing the forecast reports, previously prepared and used by Acevedo, to purchase raw materials. On June 30,1997, Vazquez named Evelyn Ortega ("Ortega"), another 24 year old, who had been a part-time employee and had recently obtained a bachelors degree, to the position of Raw Materials Purchaser, reporting directly to Fonseca. Acevedo was never informed that such a position was open even though she had been in charge of purchasing raw material for the company since 1974. Thereafter, Acevedo continued to report to Vazquez, but only as buyer of miscellaneous materials. As such, she was only responsible for purchasing tools, paper, masks and other materials which are not directly used in the manufacture of the lithographic blankets. Acevedo contends this reduction in her duties limited her involvement in the core business of the company to mere clerical work and data entry and curtailed her opportunities to remain in contact with clients and suppliers. Nonetheless, Acevedo's salary and benefits were not curtailed. Unlike Ortega, Acevedo remained a salaried employee who did not have to punch the clock.

Acevedo contends that, in addition to the progressive taking away of her duties, defendants unleashed a pattern of hostility marked by numerous verbal age-based remarks. Allegedly, she found a note on her desk with the words "vieja loca" ("old hag") and received a voice mail saying "vieja chocha, no vales na' " ("old fart, you are worthless"). She claims that defendants isolated and harassed her by placing the door bell that controls the entry and exit of employees and visitors to the plant in her office, placing armoires in her office space, denying her access to certain computer programs and training in technology associated with her duties. Moreover, Acevedo claims that Vazquez avoided and refused to interact with her directly, to the point that she felt shunned.

Acevedo filed a charge before the Anti Discrimination Unit of the Department of Labor ("ADU") on December 16, 1997, claiming discrimination on the basis of age and sex. The EEOC issued Acevedo a right to sue letter on July 10, 2000.

There is no written evaluation or record that Acevedo was ever admonished until May 7, 1998 when she was notified that she had been paid excessive sick days in the years 1997 and 1998 and informed that the company would charge future absences to her vacation leave. Two months later, Vazquez sent a letter to Acevedo complaining about her excessive absences and her daughter's involvement in her work on company premises. Then, in mid 1998, Acevedo suffered a fall and reported to the State Insurance Fund. Her leave lasted from July 31, 1998 to June 1, 1999. When Acevedo returned to work, she was informed she would thereafter report to Fonseca rather than Vazquez. Acevedo received subsequent reprimands regarding her absenteeism on August 3, 1999, September 22, 1999, and on April 11, 2000.

In August, 2000 all union employees at Coatings went on a labor strike. On Au-gust 18, 2000, Acevedo filed the instant complaint. Then, on September 26, the company laid off all non-union and administrative employees, including Acevedo. Some employees worked part-time despite the strike. The strike ended on December 2000 and in January of 2001, Coatings began recalling only the essential administrative personnel and the managers of the production area. Neither Acevedo nor Dwight Sepulveda ("Sepulveda"), who had since become raw material purchaser were recalled. Coatings, however, recalled Fonseca and she is currently in charge of raw and miscellaneous materials purchasing, the tasks that had been performed by Acevedo.

## DISCUSSION

### A. Continuing Violation

At the outset, the Court addresses defendants' argument that Acevedo's claims with respect to actions that took place before February 20, 1997 are time barred because she was required to file a charge with the appropriate state agency within 300 days of the alleged discrimination and she only filed a charge with the ADU on December 16, 1997. In doing so, defendants purport to limit the scope of the allegedly discriminatory conduct undertaken against Acevedo. In turn, Acevedo argues that she can include the otherwise untimely acts, namely, the removal of her duties to perform inventory in 1995 and the reassignment of the forecasting function to Enid Fonseca in 1996, under a continuing or serial violation doctrine. This doctrine creates an exception to the 300 day limitation when the "unlawful behavior is deemed ongoing." *Provencher v. CVS Pharmacy*, 145 F.3d 5, 14 (1st Cir. 1998); *Velazquez v. Chardon*, 736 F.2d 831, 833 (1st Cir.1984). The purpose of the continuing violation doctrine is to permit the inclusion of acts whose discrimina-

tory character was not apparent at the time they occurred and to protect a plaintiff who is "unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern." *Provencher,* 145 F.3d at 15 *(citing Speer v. Rand McNally & Co.,* 123 F.3d 658, 662 (7th Cir.1997)).

■ To prove a serial violation, Acevedo must first establish an anchor violation occurring within the appropriate statute of limitations period, such as her demotion to miscellaneous material buyer and her subsequent termination. Secondly, the untimely acts cannot be considered under the serial violation doctrine if they should have been perceived as discriminatory at the time or are not linked to the timely discriminatory acts by repetition, similarity or continuity. *Provencher,* 145 F.3d at 14–15; *De Novellis v. Shalala,* 124 F.3d 298, 309 (1st Cir.1997). In her deposition, Acevedo clearly states that she initially did not understand the taking away of her inventory and forecasting functions to be discriminatory until later, when she began to notice an increase in the derogatory comments and a pattern of demotion and harassment (Docket 68, Exhibit A at 54). For this reason, the Court will consider actions that took place prior to February, 1997 as potentially discriminatory acts despite their untimeliness. The fact finder is entitled to look at this evidence in its totality to determine whether defendants' conduct was indeed discriminatory.

## B. Co–Defendant Vazquez's Motion for Summary Judgment

■ Co-defendant Antonio Vazquez seeks summary judgment on the ground that no individual liability can attach to him under Title VII or ADEA. "Although the First Circuit Court of Appeals has declined to determine whether individuals can be held liable under the federal anti-discrimination statutes, almost all circuits that have addressed the issue have determined that individual liability is not authorized." *Orell v. UMass Memorial Medical Center, Inc.,* 203 F.Supp.2d 52, 64 (D.Mass. 2002); *Flamand v. American International Group, Inc.,* 876 F.Supp. 356, 363 (D.P.R.1994). Furthermore, there is ample jurisprudence in the district courts of this circuit finding that ADEA and Title VII do not contemplate the individual liability of supervisors. *Orell,* 203 F.Supp.2d at 64. *(citing Vizcarrondo v. Board of Trustees of University of Puerto Rico,* 139 F.Supp.2d 198, 202 (D.P.R.2001)). Consequently, Acevedo's claims against Vazquez in his individual capacity under Title VII and ADEA are dismissed.

■ The Supreme Court of Puerto Rico however, has held that the definition of "employer" includes supervisors, officers, administrators and agents of a corporation, and that they can be sued in their personal and individual capacity for their own acts of sexual harassment. *Arroyo Rodriguez v. Econo Supermarket, Inc.,* 204 F.Supp.2d 289, 293 (D.P.R.2002) *(citing Rosario Toledo v. Distribuidora Kikuet, Inc.,* —— D.P.R. ——, 2000 WL 943550, \*306 (2000)). *Rosario Toledo* clearly reveals that the Court intended its holding to apply to claims under Law 100, Law 60 or Law 17. *Arroyo,* 204 F.Supp.2d at 295. Vazquez is clearly amenable to suit under Law 100 in his individual and personal capacity, as well as his official capacity as Acevedo's supervisor and General Manager of Coatings. Accordingly, only Acevedo's federal law claims against Vazquez are dismissed. The state law claims against Vazquez survive summary judgment.

## C. Coating's Motion for Summary Judgment

Co-defendant Coatings contends that Acevedo cannot establish that it discrimi-

nated against her on the basis of her age or gender. In particular, Coatings sustains that Acevedo cannot prove she suffered an adverse employment action, that her performance met Coatings' expectations, that she was replaced, or that Coatings had a continued need for her services after the strike.

■ The framework for proving intentional discrimination, including discrimination on the basis of gender or age, varies depending on the availability of direct evidence. Absent direct evidence or a "smoking gun," the plaintiff must meet the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)("McDonnell Douglas"); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Direct evidence "normally contemplates only those statements by a decision maker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Vesprini v. Shaw Contract Flooring Services, Inc.*, 315 F.3d 37, 41 (1st Cir.2002) *(citing Melendez-Arroyo v. Cutler-Hammer de P.R. Co.*, 273 F.3d 30, 35 (1st Cir.2001)).

■ To establish a *prima facie* case of age and gender discrimination, Acevedo must demonstrate that (1) she is within the protected class (female and over the age of forty); (2) that her job performance was satisfactory and met Coatings' legitimate expectations; (3) that she suffered an adverse employment action; and (4) that Coatings sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills. *Mesnick*, 950 F.2d at 823; *Flamand*, 876 F.Supp. at 368; *Suarez v. Pueblo Int'l Inc.*, 229 F.3d 49, 53 (1st Cir.2000).

Establishing a *prima facie* case generates a rebuttable presumption of discrimi-

nation. While the burden of persuasion remains at all times with the plaintiff, the *prima facie* case shifts the burden of production to the employer, who must then articulate a legitimate and non-discriminatory reason for the adverse employment action. If the employer meets this limited burden, the presumption vanishes and the plaintiff must adduce sufficient evidence to demonstrate that age was a motivating factor in the challenged employment action. *Zapata-Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 45 (1st Cir.2002). To do so, the plaintiff must show that the proffered reason is pretextual such that discriminatory animus can be inferred. *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir.2002); *Mesnick*, 950 F.2d at 824 ("It is not enough for a plaintiff to merely impugn the veracity of the employer's justification, he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham but a sham intended to cover up the employer's real motive, age discrimination.") *Mesnick*, 950 F.2d at 824 *(citing Medina-Munoz*, 896 F.2d at 9).

### 1. Direct Evidence of Discrimination

■ Plaintiff contends that she has proffered direct evidence of discrimination such that it is unnecessary to proceed under the *McDonnell Douglas* burden shifting framework. She specifically refers to comments made by co-defendant Vazquez and his assistant Enid Fonseca. These comments include repeatedly referring to Acevedo as an "old fart" ("vieja chocha"), "the old lady" ("la vieja"), "the witch" ("la bruja"), "the menopausal one" ("la menopausica"), and "the old parrot" ("vieja cacatua")(Docket No. 68, Exhibit A at 55–57, 136–37, Exhibit C at 32–44, Exhibit G at ¶ 8–11, Exhibit H). Stray workplace remarks made by either non-decision makers or decision makers not involved in the decisional process are normally insuffi-

cient, standing alone, to establish discriminatory animus. *Gonzalez*, 304 F.3d at 69 (*citing Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 36 (1st Cir.2001)). While perhaps probative of discrimination, the statements must be made by decision makers and must bear squarely on the adverse employment action to satisfy the burden of proving discrimination by direct evidence. *Ayala–Gerena v. Bristol Myers–Squibb Company*, 95 F.3d 86, 96–97 (1st Cir.1996); *Mulero–Rodriguez v. Ponte Inc.*, 98 F.3d 670, 676 (1st Cir.1996)(Statements made by decision makers can be evidence of age discrimination depending on the remoteness between the alleged statements and the adverse employment decision). Temporal proximity between the remarks and the ensuing employment action speak to the reasonableness of an inference that a causal relationship existed between the remarks and the decision made. *Vesprini*, 315 F.3d at 41–42. Furthermore, the comments must unambiguously evince an age-based animus, such that they are not reasonably susceptible to a benign connotation. *Id.; Gonzalez*, 304 F.3d at 70. A statement that "can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus." *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 583 (1st Cir.1999).

While plaintiff presents a plethora of discriminatory remarks, many of them made by Vazquez and Fonseca, who at different times were Acevedo's supervisors and in decision making positions, these statements lack the temporal proximity and specificity required to surmise that they were directly connected to any particular adverse action taken against Acevedo. *Vesprini*, 315 F.3d at 42–3 (Stating that the lack of temporal proximity between the allegedly discriminatory remarks and the adverse employment action severely undermines the reasonableness of an inference that there existed a causal relation-ship between them). Because Acevedo has failed to identify the time and context of the allegedly ageist remarks with sufficient particularity, the Court finds them insufficient as direct evidence of discrimination. While it would be a stretch to deem many of the comments targeted at Acevedo as susceptible to benign interpretation, standing alone they are insufficient to establish discriminatory animus. Consequently, the Court will proceed to analyze whether Acevedo can establish a *prima facie* case.

### 2. Prima Facie Case

Acevedo is clearly part of the protected class since she is female and was born on September 25, 1944. In 1996, when she slowly began to perceive a hostile and discriminatory work environment, Acevedo was 52.

 It is the second element of the *prima facie* case, whether Acevedo met Coatings' legitimate expectations, that is strongly in dispute in this case. While the record includes little affirmative evidence of satisfactory job performance, there is also little evidence suggesting Acevedo's job performance during her 26 years with the company was poor. The only negative suggestions regarding Acevedo's job performance appear during the final years of her tenure at Coatings, after she had filed a charge with the ADU and after 20 years without complaints. There is no record that Acevedo was ever admonished for any reason prior to July 7, 1998. Coatings contends this is due to the fact that there was no official evaluation mechanism and that Vazquez had never contemplated reprimanding or terminating Acevedo due to their longtime friendship. Nonetheless, viewing the facts in the light most favorable to Acevedo, the admonishments she received starting in mid–1997 are highly suspect, especially given their timing in relation with the filing of a charge before

the ADU and the contemporaneity with the other evidence of discrimination. Where as here, the plaintiff has a long history at the company without any consistent evaluations or other clear indication of negative work performance, there is an inference that her job performance was adequate. *Mulero–Rodriguez,* 98 F.3d at 673 (*citing Keisling v. SER–Jobs for Progress, Inc.,* 19 F.3d 755, 760 (1st Cir.1994)) (Long experience at company supports an "inference that an employee's job performance was adequate to meet an employer's needs even when the evidence did not extend all the way to the time of the discharge.") For this reason, the Court will assume that Acevedo has satisfied the second element of her *prima facie* case.

■■■■ Acevedo also meets the third element of her *prima facie* case, inasmuch as she was subjected to several adverse employment actions, demonstrating a gradual demotion and taking away of her functions. An adverse employment action need not rise to the level of a discharge to be actionable and encompasses demotions, disadvantageous transfers or assignments, refusals to promote, etc. *Nelson v. University of Maine System,* 923 F.Supp. 275, 281 (D.Maine 1996). Even lateral transfers that do not entail a compensation in pay or benefits may constitute an adverse employment action. *Id.* The record suggests that many of the responsibilities initially assigned to Acevedo were reassigned to other individuals in the company, thus suggesting she was demoted. Furthermore, the decision to terminate Acevedo's employment clearly constitutes an adverse employment action. First, the responsibility of conducting physical inventory was transferred to the Accounting Department in March 1995. Secondly, the forecasting function essential to the purchasing of raw materials was reassigned to Enid Fonseca in late 1995, early 1996. In June 1997, Evelyn Ortega was named Raw Material Purchaser, a position Acevedo was never informed was open, and which left her relegated to the task of only purchasing miscellaneous materials. This can be understood as a demotion or a failure to promote. Finally, Coatings laid off Acevedo in September 2000 and later, when the company began to recall employees after the end of the labor strike, Acevedo was never called back.

■■■■ It is clear that Coatings had a continuing need for the tasks performed by Acevedo, thereby allowing her to meet the fourth element of her prima facie case. By Coatings' own admission, the purchase of raw material and miscellaneous materials was central to the company's operations and a failure to obtain the requisite raw materials could halt the production of the lithographic blankets which are at the core of the company's business. Moreover, the company does not contest that Acevedo's functions were reassigned and continue to be performed by other individuals within the company. *See Meijas Miranda v. BBII Acquistion Corp.,* 120 F.Supp.2d 157, 164 (D.P.R.2000). Significantly, both Enid Fonseca and Evelyn Ortega, who took over several of her responsibilities, are considerably younger than Acevedo. In sum, Acevedo has demonstrated that she was replaced and that Coatings had a continued need for her position.

Looking at the facts in the light most favorable to plaintiff and despite the conflicting evidence regarding whether Acevedo was satisfactorily performing her job, the Court concludes Acevedo has established a *prima facie* case of age and gender discrimination.

## D. Age Discrimination Claim

*1. Coating's Proffered non-discriminatory reasons*

■■■■ In turn, Coatings has proffered several reasons for the actions taken

against Acevedo. Coatings alleges that the inventory task is one usually performed by the accounting department and that this became clearer as the company grew in size. Similarly, Coatings alleges two main reasons for reallocating the forecasting function to Enid Fonseca: Acevedo's alleged poor job performance which often led to the lack of raw materials necessary for production and the better academic qualification of the younger recruits.

The proffered reason of unsatisfactory job performance is heavily disputed in this case. Coatings has submitted evidence suggesting Acevedo failed to purchase the necessary raw materials to the point where the production schedule was affected. Acevedo, nonetheless, has proffered evidence suggesting that many suppliers refused to sell her the requisite materials due to a credit hold and the company's failure to make payments. It is for a jury to weigh the evidence and make credibility assessments such as these.

 As respects Acevedo's discharge, Coatings has met its circumscribed burden of identifying the strike and subsequent drastic reduction in personnel as a non-discriminatory reason. It is clear that "an employer, consistent with its business judgment, may eliminate positions during the course of a downsizing without violating Title VII even though those positions are held by members of protected groups". *Smith v. F.W. Morse & Co., Inc.,* 76 F.3d 413, 422 (1st Cir.1996). An employer can hire or fire any employee for any reason so long as the choice is not driven by gender, age or some other protected characteristic, but he cannot selectively clean house hiding behind euphemisms such as downsizing or streamlining. *Smith,* 76 F.3d at 422. Even when the evidence does not suggest that Coatings used the strike as a mere opportunity to lay off Acevedo because she was not the only person to lose her job,

*Weston–Smith v. Cooley Dickinson Hospital, Inc.,* 153 F.Supp.2d 62, 71 (D.Mass. 2001), Acevedo has raised a triable issue of fact concerning Coatings' decision not to call her back after the strike, when several of the individuals who took over her duties were in fact recalled despite having spent less time with the company. In conclusion, Acevedo has raised sufficient questions of material fact to reach a jury on her age discrimination claim.

### 2. Pretext and Discriminatory Animus

While "the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Mulero–Rodriguez,* 98 F.3d at 678 (*citing Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505). Assuming *arguendo* that Coatings' proffered reason were sufficient to pop the presumption of discrimination in this case, the Court finds that Acevedo has introduced sufficient evidence that some, if not all, the adverse actions taken against her were pretextual and discriminatory. *Id.* The evidence in this case is anything but conclusive; it can be seen as, on the one hand, a series or reasonable measures and business decisions which a Court would not normally second guess, or on the other hand, a repeated effort to strip away Acevedo's responsibilities and harass her. *Id.* "Thus it is a prime fodder for a jury." *Id.* Viewing the totality of the evidence in this case and drawing all inferences in Acevedo's favor, the Court believes Acevedo has introduced sufficient evidence to make out a jury question as to pretext and discriminatory animus. The record is plagued with issues of motive and intent for a jury to determine. These include whether the alleged shortage of raw materials was caused by Acevedo's poor job performance or the company's financial and credit difficulties, whether her job per-

formance was in fact unsatisfactory given the lack of formal written evaluations, and whether the reasons proffered for reassigning some of her tasks and not call her back after the strike were legitimate. *See Mejias,* 120 F.Supp.2d at 167; *Flamand,* 876 F.Supp. at 369–70 (Summary judgment denied because trial worthy issue existed as to whether plaintiff had satisfactorily performed her job). Similarly, the jury should hear the plethora of comments and name-calling to determine whether evince discriminatory animus and were directed to harassing Acevedo. The nature and extent of the remarks, notes and messages left to Acevedo, the late reprimands criticizing her absenteeism after over 20 years without complaint, and the progressive manner in which her duties were given to other individual culminating in the decision not to call her back after the strike, despite her managerial position with the company, are sufficient for a jury to draw an inference of discriminatory intent. *See Smith,* 76 F.3d at 423. "Above all, courts will look at evidence of discrimination not in splendid isolation, but as part of an aggregate package of proof offered by the plaintiff." *Mesnick,* 950 F.2d at 824.

### E. Gender Discrimination Claim

 Acevedo's gender discrimination claim is based on a disparate treatment doctrine. *See generally Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). She specifically alleges that she was paid less than other male employees at her same level. Defendants argue that there was no uniform process for salary increases at Coatings and that not all employees received regular salary increases. In fact, they suggest that on many occasions women employees received higher increases than their male colleagues. (Docket No. 50 at 17). Acevedo invokes a disparate treatment claim to suggest Coatings purposefully denied her

salary increases because of her gender. *Smith,* 76 F.3d at 420.

To prove a case of disparate treatment, Acevedo must show that gender bias was the motive behind this refusal. *Stout v. Baxter Healthcare Corp.,* 282 F.3d 856, 859–60 (5th Cir.2002). In other words, to survive the motion for summary judgment, Acevedo must present "a prima facie case, combined with sufficient evidence that the employer's asserted justification is false." *Mejias Miranda v. BBII Acquisition Corp.,* 120 F.Supp.2d 157, 163 (D.P.R.2000) (*citing Reeves v. Sanderson Plumbing Products Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Acevedo has proffered no evidence in this case, suggesting that gender (as opposed to age) was a motivating factor in any of the adverse employment actions taken against her. In fact, many of the duties she complains were taken away from her, were subsequently assumed by female employees like Fonseca and Ortega. *Mejias,* 120 F.Supp.2d at 164. Significantly, Acevedo has been unable to meet her burden of adducing sufficient evidence showing a connection between her gender and her salary as opposed to that of similarly situated male employees. *See Smith,* 76 F.3d at 425; *Lawton v. State Mutual Life Assurance Co. of America,* 924 F.Supp. 331, 343 (D.Mass.1996). In the face of this lack of evidence suggesting a link between Acevedo's gender and the adverse employment action, she is unable to rebut Coatings' proffered justifications. *Smith,* 76 F.3d at 425. Accordingly, the Court grants summary judgment as to Acevedo's gender discrimination claims.

### F. Retaliation Claim

 As in her age and gender claims, absent direct evidence, the burden shifting framework of *McDonnell Douglas* also applies to Acevedo's retaliation claim.

*Ruiz v. Caribbean Restaurants, Inc.,* 54 F.Supp.2d 97, 113 (D.P.R.1999). To make a *prima facie* case of retaliation, Acevedo must demonstrate that: (1) she engaged in ADEA protected conduct; (2) she was thereafter subjected to an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action. *Mesnick,* 950 F.2d at 827; *Orell,* 203 F.Supp.2d 52, 60; *Vizcarrondo,* 139 F.Supp.2d at 204. "The employee's eventual success in an ADEA claim is irrelevant to his retaliation claim." *Mesnick,* 950 F.2d at 827. Once a *prima facie* case of retaliation is made, the production burden is on defendant to articulate a legitimate non-discriminatory reason for its employment decision. Doing so, shifts the burden back to plaintiff to establish pretext masking retaliation. In this step, "the critical inquiry becomes whether the aggregate evidence of pretext and retaliatory animus suffices to make out a jury question." *Mesnick,* 950 F.2d at 827. Rather than focus on the burden shifting framework, it is important for the Court to look at the evidence as a whole and whether it is sufficient to make out a jury question as to pretext and discriminatory animus. *Ruiz,* 54 F.Supp.2d at 114. On the record, the Court finds it does. Acevedo has pleaded enough facts to establish a prima facie case of retaliation. She filed a charge before the ADU and thereafter defendants took several adverse employment actions against her. The evidence is not conclusive at this stage for the Court to determine whether the reasons proffered by defendants are pretextual or legitimate. Therefore, there are genuine issues of material fact regarding the motive and intent to demote and terminate plaintiffs' employment. *Vizcarrondo,* 139 F.Supp.2d at 205. These issues are for a jury to determine.

## CONCLUSION

Because genuine issues of material facts remain regarding whether plaintiff was satisfactorily performing her duties and whether the non-discriminatory reasons proffered by Coatings were pretextual, Coatings motion for summary judgment is DENIED as to Acevedo's age discrimination and retaliation claim and GRANTED as to her gender discrimination claim. Vazquez's motion for summary judgment is GRANTED as to the federal claims against Vazquez but DENIED as to the state law claims against him.

IT IS SO ORDERED.